**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PEDRO JOSE HERNANDEZ-CRUZ,
                    *Petitioner,*

            v.

ERIC H. HOLDER JR., Attorney
General,
                    *Respondent.*

No. 08-73805

Agency No.
A092-964-221

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 3, 2011—Pasadena, California

Filed July 8, 2011

Before: Harry Pregerson, Raymond C. Fisher, and
Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

9107

## COUNSEL

David G. Meyer of Jones Day, Los Angeles, California, and Amber Finch of Reed Smith LLP, Los Angeles, California, for petitioner Pedro Jose Hernandez-Cruz.

Joseph D. Hardy, Jr. and Blair O'Connor of the Office of Immigration Litigation of the Civil Division of the U.S.

Department of Justice, Washington, DC, for respondent Eric H. Holder Jr.

---

## OPINION

BERZON, Circuit Judge:

Pedro Jose Hernandez-Cruz, a native and citizen of Guatemala, was convicted twice for second-degree commercial burglary, in violation of California Penal Code § 459. As a result, the Board of Immigration Appeals (BIA) found him removable as an alien convicted of an aggravated felony, and also as an alien convicted of two crimes involving moral turpitude (CIMTs). Hernandez-Cruz petitions for review, challenging the determinations that the prior convictions are grounds for removal.

The BIA held, first, that Hernandez-Cruz's two second-degree commercial burglary convictions were generic attempted theft offenses, qualifying each as an aggravated felony, and therefore as a ground for removal.[1] *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Noting that the two elements of a generic attempted theft offense are an intent to commit a theft offense and an overt act constituting a substantial step toward the completion of that offense, the BIA employed the modified categorical approach and held that Hernandez-Cruz necessarily admitted both when he pleaded guilty in each instance to "enter[ing] a commercial building . . . with the intent to commit larceny and any felony." According to the BIA, the "sub-

---

[1] By a "generic" offense, we mean one that contains the elements of the federal definition of the crime in question. *See Taylor v. United States*, 495 U.S. 575, 598 (1990). The generic definition of burglary, for example, has the following elements: "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." *Id.* A state statute would qualify as generic burglary, therefore, if it contains at least those elements.

stantial step" that Hernandez-Cruz necessarily admitted was "entering the building where the property sought to be stolen was located." Second, the BIA held that the two commercial burglary convictions were CIMTs under Ninth Circuit precedent, providing an alternate ground for Hernandez-Cruz's removal. *See* 8 U.S.C. § 1227(a)(2)(A)(ii).

Simply entering a commercial building, however, is not in itself a "substantial step" supporting attempted theft liability. The BIA thus erred in holding that Hernandez-Cruz's convictions are generic attempted theft offenses. Similarly, the BIA erred in concluding that the convictions qualified as CIMTs, either because it misapprehended the elements of the crime of conviction or because it misread our caselaw. We therefore grant the petition for review.

## FACTUAL AND PROCEDURAL HISTORY

Hernandez-Cruz is 52 years old. He has been lawfully and continually present in the United States for thirty years and a lawful permanent resident (LPR) for twenty. The Government's efforts to remove Hernandez-Cruz are based on two convictions for second-degree burglary under § 459 of the California Penal Code, which provides in relevant part that "[e]very person who enters any . . . shop, . . . store, . . . or other building . . . with intent to commit grand or petit larceny or any felony is guilty of burglary."[2]

On June 15, 2006, Hernandez-Cruz entered a Los Angeles supermarket during normal business hours, placed three cases of beer (retail value: $42.62) in a shopping cart, and pushed the cart out of the store without paying. The supermarket's security guard confronted Hernandez-Cruz in the parking lot and held him until the police arrived. Hernandez-Cruz was

---

[2]California law provides, as a general matter, that burglary of an inhabited dwelling or vessel is in the first degree, while all other burglaries are in the second degree. *See* Cal. Penal Code § 460.

subsequently charged in a two-count felony complaint. Count One of the complaint alleged:

> On or about June 15, 2006, in the County of Los Angeles, the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by PEDRO HERNANDEZCRUZ, [sic] who did enter a commercial building occupied by NORTHGATE SUPERMARKET with the intent to commit larceny and any felony.

Count Two charged "petty theft with priors" in violation of California Penal Code § 666, which provides for a harsher maximum sentence for petty theft if the defendant previously served a term of imprisonment for a theft offense. As part of a plea bargain, Hernandez-Cruz pleaded no contest[3] to Count One, and his attorney agreed to "stipulate to a factual basis based on the police report."[4] In exchange, Count Two, the theft charge, was dismissed, and the imposition of Hernandez-Cruz's sentence on Count One was suspended pending the successful completion of three years' probation.

About five months later, Hernandez-Cruz was arrested for walking out of a different supermarket with $68.46 in food items he had not paid for. Hernandez-Cruz was again charged in a two-count felony complaint, the first count of which alleged as follows:

---

[3]In California, the legal effect of a no contest (or "nolo contendere") plea to a felony offense is "the same as that of a plea of guilty for all purposes." Cal. Penal Code § 1016(3). Accordingly, for the sake of convenience, we refer to both pleas as "guilty" pleas.

[4]California law requires that courts "cause an inquiry to be made of the defendant to satisfy itself . . . that there is a factual basis for the plea." Cal. Penal Code § 1192.5. The California Supreme Court has explained that this obligation is met when "the trial court inquires of defense counsel regarding the factual basis, [and] counsel . . . stipulate[s] to a particular document that provides an adequate factual basis, such as a . . . police report." *People v. Holmes*, 84 P.2d 366, 372 (Cal. 2004).

On or about November 15, 2006, in the County of Los Angeles, the crime of SECOND DEGREE COMMERCIAL BURGLARY, in violation of PENAL CODE SECTION 459, a Felony, was committed by PEDRO JOSECRUZ [sic] HERNANDEZ, who did enter a commercial building occupied by FOOD 4 LESS with the intent to commit larceny and any felony.

Pursuant to a plea agreement, Hernandez-Cruz pleaded guilty to Count One and was sentenced to 16 months' imprisonment. His attorney again stipulated that the police report provided a factual basis for the plea. A second count, which, like the complaint in the earlier case, alleged petty theft with priors, was dismissed. At the same hearing, Hernandez-Cruz was found to be in violation of his probation on the June 2006 offense. His probation was revoked, and he was sentenced to 16 months' imprisonment for the earlier conviction, to run concurrently with the 16 months he would serve for the later one.

Hernandez-Cruz was paroled on July 26, 2007, but released to the custody of Immigration and Customs Enforcement (ICE). He was denied immigration bond and so remains in immigration detention.

ICE served Hernandez-Cruz with a Notice to Appear, charging him with being removable under 8 U.S.C. § 1227(a)(2)(A)(iii)[5] as an alien convicted of the aggravated felony of a theft or burglary offense, as defined in 8 U.S.C. § 1101(a)(43)(G).[6] This charge of removability was based on the conviction for the November 2006 offense.

---

[5]"Any alien who is convicted of an aggravated felony at any time after admission is deportable." 8 U.S.C. § 1227(a)(2)(A)(iii).

[6]"The term 'aggravated felony' means . . . a theft offense (including receipt of stolen property) or burglary offense for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

Hernandez-Cruz appeared in immigration court for the first time about a week later. At that hearing, the Government lodged a second charge of removability, this one under 8 U.S.C. § 1227(a)(2)(A)(ii),[7] alleging that Hernandez-Cruz was removable because he was convicted of two or more crimes of moral turpitude not arising out of a single scheme of criminal misconduct—to wit, the two separate California commercial burglary offenses. The Immigration Judge (IJ) explained the charges to Hernandez-Cruz and asked him if he would like additional time to find an attorney; when he said that he would, the IJ continued the hearing.

Hernandez-Cruz appeared for his next hearing on December 17, 2007, and stated that he would proceed without an attorney. After Hernandez-Cruz admitted the Government's factual allegations—in particular, that he was convicted of second-degree burglary for each of the two offenses—the IJ examined the records submitted by the Government to determine whether the convictions constituted aggravated felonies and/or CIMTs.[8] On the basis of those records, the IJ determined that the convictions were not generic burglary offenses, as California's burglary statute does not require the entry to be either unlawful or unprivileged, whereas the federal generic definition does. *See Taylor*, 495 U.S. at 599. The IJ proceeded to hold, however, that the police reports demonstrated that the convictions qualified as generic theft offenses. That determination, coupled with the fact that Hernandez-Cruz was sentenced to more than a year for each conviction, led the IJ to conclude that his convictions were for aggravated felonies. The IJ made no specific finding with regard to the

---

[7]"Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, regardless of whether confined therefor and regardless of whether the convictions were in a single trial, is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii).

[8]Specifically, the IJ examined the felony complaints, the abstracts of judgment, the transcripts of the change of plea and sentencing hearings, and the police reports.

Government's allegation that the convictions also constituted CIMTs but ordered Hernandez-Cruz removed on that basis as well.

On appeal, the BIA reversed. The BIA noted that although the definition of a generic theft offense, as provided in *Arteaga v. Mukasey*, 511 F.3d 940, 947 (9th Cir. 2007), requires as an element the taking of property, the statute of conviction, California Penal Code § 459, has no such element. Accordingly, the BIA held, a conviction under § 459 is not a generic theft offense. The BIA stated in a footnote, however, that "[u]nder the modified categorical approach, [Hernandez-Cruz's] offense might have been chargeable as an attempted theft. But no such charge was lodged." The BIA deferred consideration of the IJ's holding on the CIMTs charge because the holding was unexplained, and remanded the case.

On remand, the Government filed an additional charge of removability, alleging that Hernandez-Cruz was subject to removal under 8 U.S.C. § 1101(a)(43)(G) & (U) for having been convicted of a different aggravated felony, a generic attempted theft offense.[9] The Government's new charge did not add any factual allegations or specify the conviction on which it was based.[10]

---

[9]Subsection (G) of 8 U.S.C. § 1101(a)(43), as previously stated, defines "aggravated felony" to include "a theft offense . . . for which the term of imprisonment [is] at least one year," while subsection (U) provides that "an attempt or conspiracy to commit an offense described in this paragraph" also constitutes an aggravated felony. 8 U.S.C. § 1101(a)(43)(G) & (U).

[10]In light of our holding, we do not consider Hernandez-Cruz's argument that the failure to specify the conviction on which the new charge of removability was based violated his due process rights. *See* 8 U.S.C. § 1229(a)(1)(C) (requiring the charging document in removal proceedings to include "[t]he acts or conduct alleged to be in violation of law."); 8 C.F.R. § 1003.15(b)(3) (same); *Cardoso-Tlaseca v. Gonzales*, 460 F.3d 1102, 1107 (9th Cir. 2006).

Upon consideration of the same documents examined before, the IJ held, first, that the crimes were theft offenses, and therefore CIMTs, meaning that Hernandez-Cruz was removable for having committed two CIMTs. Second, the IJ determined that because the crimes were theft offenses, they also necessarily constituted generic attempted theft offenses, making them aggravated felonies, and rendering Hernandez-Cruz removable on that basis as well.

Hernandez-Cruz filed an appeal with the BIA, which was ultimately dismissed. The BIA held: (1) that the conviction documents established that Hernandez-Cruz's convictions were for CIMTs, as both "resulted from pleas in which he stipulated, through counsel, that he had entered buildings with the intent to commit larceny, a CIMT in the Ninth Circuit"; and (2) that each conviction also qualified as an attempted theft offense and therefore as an aggravated felony, because Hernandez-Cruz's "convicted conduct reflects both the intent to commit a 'theft offense' and also the commission of an 'overt act' constituting a 'substantial step' toward the completion of such an offense, i.e., entering the building where the property sought to be stolen was located."[11]

Hernandez-Cruz, still proceeding pro se, filed a timely petition for review, along with a motion to proceed *in forma pauperis*, for a stay of removal, and for the appointment of pro bono counsel. The Government opposed Hernandez-Cruz's motions and filed its own, requesting summary affirmance. A two-judge panel denied the Government's motion and granted all three of petitioner's motions.

---

[11]Although the aggravated felony convictions rendered Hernandez-Cruz ineligible for cancellation of removal, *see* 8 U.S.C. § 1229b(a)(3), the IJ had nonetheless evaluated and denied as a matter of discretion his application for cancellation in the event that the BIA reversed the aggravated felony holding alone. On appeal, the BIA agreed with the IJ's holding that, even if eligible, Hernandez-Cruz should be denied cancellation of removal as a matter of discretion.

**DISCUSSION**

An immigrant convicted of an aggravated felony after being admitted to this country is removable. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). Similarly, an immigrant is removable if, after being admitted, he is convicted of two or more CIMTs that did "not aris[e] out of a single scheme of criminal misconduct." 8 U.S.C. § 1227(a)(2)(A)(ii). As mentioned, the BIA held that Hernandez-Cruz's convictions were both aggravated felonies and CIMTs. We address each holding in turn.

**I.**

**[1]** Under the Immigration and Nationality Act (INA), a conviction for a generic attempted theft offense that results in a prison term of at least one year is an aggravated felony. *See* 8 U.S.C. § 1101(a)(43)(G) & (U).**[12]** We review de novo the BIA's determination that Hernandez-Cruz's convictions were for generic attempted theft offenses. *See Ngaeth v. Mukasey*, 545 F.3d 796, 800 (9th Cir. 2008) (per curiam). To do so, we use the categorical and modified categorical approaches of *Taylor v. United States*, 495 U.S. 575 (1990), and *Shepard v. United States*, 544 U.S. 13 (2005). Under those approaches, we compare the crime of conviction (here, Hernandez-Cruz's convictions under California Penal Code § 459) with the generic crime (here, attempted theft) to determine whether the latter encompasses the former. *See Ngaeth*, 545 F.3d at 800-01.

**[2]** Under the categorical approach, a conviction under § 459 qualifies as a generic attempted theft offense "if the full range of conduct covered by [§ 459] falls within the . . . definition of" a generic attempted theft offense. *Id.* at 800 (citation and quotation marks omitted). *Ngaeth* defined a generic attempted theft offense as having two elements: "[1] an intent to commit a theft offense, of the sort generically defined by

---

**[12]***See* note 9, *supra*, for the text of these statutory provisions.

[our precedent], coupled with [2] an overt act constituting a substantial step towards the commission of the offense." *Id.* at 801. A generic theft offense, in turn, is defined as: "[1] a taking of property or an exercise of control over property [2] without consent [3] with the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent." *Carrillo-Jaime v. Holder*, 572 F.3d 747, 750 (9th Cir. 2009) (citation and quotation marks omitted, alterations in original).

**[3]** Section 459 has three elements: (1) entry, (2) into any building, certain vehicles and vessels, or other listed structures and containers, (3) with the intent to commit larceny or any felony. *See People v. Davis*, 958 P.2d 1083, 1085 (Cal. 1998).[13] As we recognized in *Ngaeth*, § 459 criminalizes conduct beyond generic attempted theft offenses—for example, entering a locked vehicle with the intent to commit not theft, but arson or vandalism. *See Ngaeth*, 545 F.3d at 801. Because one can be convicted under § 459 for a crime that does not qualify as generic attempted theft, the statute is not a categorical match for the generic aggravated felony offense. *See id.*

---

[13]The statute provides in relevant part:

> Every person who enters any house, room, apartment, tenement, shop, warehouse, store, mill, barn, stable, outhouse or other building, tent, vessel, as defined in Section 21 of the Harbors and Navigation Code, floating home, as defined in subdivision (d) of Section 18075.55 of the Health and Safety Code, railroad car, locked or sealed cargo container, whether or not mounted on a vehicle, trailer coach, as defined in Section 635 of the Vehicle Code, any house car, as defined in Section 362 of the Vehicle Code, inhabited camper, as defined in Section 243 of the Vehicle Code, vehicle as defined by the Vehicle Code, when the doors are locked, aircraft as defined by Section 21012 of the Public Utilities Code, or mine or any underground portion thereof, with intent to commit grand or petit larceny or any felony is guilty of burglary.

Cal. Penal Code § 459.

**[4]** We therefore proceed with respect to the aggravated felony issue to the modified categorical approach, under which "we conduct a limited examination of documents in the record of conviction to determine if there is sufficient evidence to conclude that a defendant was convicted of the elements of the generically defined crime, without reviewing the particular facts underlying the conviction." *Id.* (citation and quotation marks omitted). The BIA held that the first element of the generic offense—"an intent to commit a theft offense," *id.*—was met because Hernandez-Cruz pleaded guilty to entering a commercial building "with the intent to commit larceny and any felony." Although that proposition is very doubtful under California law,**[14]** we need not decide whether the first attempted theft element was met, as the second clearly was not. Hernandez-Cruz's guilty plea did not "necessarily admit," *Shepard*, 544 U.S. at 26, "an overt act constituting a substantial step towards the commission of the offense," *Ngaeth*, 545 F.3d at 801.

**[5]** In addressing what Hernandez-Cruz "necessarily admit[ted]," it is critical to keep in mind that he was convicted of commercial burglary, not an attempted theft offense of any kind. So there was no determination or admission that Hernandez-Cruz had taken a "substantial step" under the law

---

**[14]**The BIA apparently believed that Hernandez-Cruz's guilty plea admitted that he entered the building with the intent to commit larceny *and* the intent to commit some other felony. Although understandable, that conclusion is incorrect; under California law, Hernandez-Cruz's plea admitted that he had *one* of those intentions, but not necessarily both. *See, e.g.*, *People v. Moussabeck*, 68 Cal. Rptr. 3d 877, 881-82 (Cal. Ct. App. 2007) ("[W]hen the accusatory pleading describes the crime in its statutory language, but in the conjunctive (e.g., inflicted physical pain *and* mental suffering; inflicted corporal punishment *and* an injury), the allegation is treated as being in its statutory disjunctive. . . . [w]hen a crime can be committed in more than one way, it is standard practice to allege in the conjunctive that it was committed every way. Such allegations do not require the prosecutor to prove that the defendant committed the crime in more than one way." (citation and quotation marks omitted, all but penultimate alteration in original)).

of attempt; that legal question was simply not relevant to the crime for which Hernandez-Cruz was convicted.

**[6]** The BIA nonetheless identified what it thought was a "substantial step" Hernandez-Cruz necessarily admitted: "entering the building where the property sought to be stolen was located." It is true that Hernandez-Cruz "necessarily admitted" entering a commercial building, as (1) "enter[ing]" (2) a listed structure (including a store) are elements of the crime to which he pleaded guilty. *See* Cal. Penal Code § 459; *Davis*, 958 P.2d at 1085. The question we must answer, therefore, is whether entering a commercial building with the intent to purloin items located therein is, as a matter of law, a "substantial step" supporting a conviction for attempted theft. It is not.

## A.

"Mere preparation" to commit a crime "does not constitute a substantial step." *United States v. Buffington*, 815 F.2d 1292, 1301 (9th Cir. 1987); *see also United States v. Hofus*, 598 F.3d 1171, 1174 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 364 (2010); *Walters v. Maass*, 45 F.3d 1355, 1359 (9th Cir. 1995); Ninth Circuit Model Criminal Instruction 5.3 (2010) ("Mere preparation is not a substantial step toward committing the crime."). "The difference between making preparations and taking a substantial step toward the commission of a crime is one of degree." *Walters*, 45 F.3d at 1359. "[I]dentifying the point at which the defendants' activities ripen into an attempt" can be difficult, and is rarely "an analytically satisfying enterprise." *United States v. Harper*, 33 F.3d 1143, 1148 (9th Cir. 1994). What is clear, however, is that "it is not enough that the defendant have intended to commit a crime. There must also be an act, and not any act will suffice." Wayne R. LaFave, 2 *Subst. Crim. L.* § 11.4 (2d ed. 2003); *see also United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192-93 (9th Cir. 2000) (en banc) (explaining the common law of attempt liability).

**[7]** We have explained that a suspect crosses the line separating preparation from attempt when his actions "unequivocally demonstrat[e] that the crime will take place unless interrupted by independent circumstances." *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007) (per curiam) (quoting *United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995) (internal quotation marks omitted)); *see also United States* v. *Saavedra-Velazquez*, 578 F.3d 1103, 1107 (9th Cir. 2009) ("[W]e have held that the 'step toward commission of the crime' must be 'of *such substantiality* that, unless frustrated, the crime would have occurred.' " (citation omitted)); Ninth Circuit Model Criminal Instruction 5.3 (2010) ("To constitute a substantial step, a defendant's act or actions must demonstrate that the crime will take place unless interrupted by independent circumstances."). Although the suspect's conduct "need not be incompatible with innocence to be punishable as an attempt, it must be necessary to the consummation of the crime and be of such a nature that a reasonable observer, viewing it in context, could conclude beyond a reasonable doubt that it was undertaken in accordance with a design to commit the [substantive offense]." *Walters*, 45 F.3d at 1359 (citation, alteration, and quotation marks omitted). To put it in slightly different terms, to constitute a "substantial step," the action in question must be "strongly corroborative of the firmness of a defendant's criminal intent." *United States v. Morales-Perez*, 467 F.3d 1219, 1222 (9th Cir. 2006) (citation and quotation marks omitted); *see also* Model Penal Code § 5.01(2) ("Conduct shall not be held to constitute a substantial step . . . unless it is strongly corroborative of the actor's criminal purpose.").

**[8]** Our cases illustrate that it is not enough to say that the suspect took certain *necessary* steps, even when intent is unquestionably criminal. In *United States v. Still*, 850 F.2d 607 (9th Cir. 1988), for example, we held that the defendant had made no substantial step toward the commission of bank robbery when he was arrested after a witness saw him putting on a long blond wig while sitting in a van, with its motor run-

ning, approximately 200 feet from the bank. *See id.* at 608. The defendant's intent was crystal clear, as he stated to police upon his arrest: "You did a good job. You caught me five minutes before I was going to rob a bank. That's what I was putting the wig on for." *Id.* *Still* nevertheless held that these facts did not establish a substantial step, explaining that they did not establish a sufficiently clear *external* manifestation of the suspect's specific intent to rob a particular bank in a particular manner in the immediate future. *See id.* at 610; *see also, e.g.*, *Buffington*, 815 F.2d at 1303; *Harper*, 33 F.3d at 1147-48.

The rationale for this requirement is at least twofold. First, even after extensive preparations, a suspect could well decide to desist from his criminal endeavor, an outcome in everyone's best interests.[15] But if merely preparatory behavior is held to be a substantial step supporting a conviction for attempt, the would-be criminal has far less incentive to change his mind at the last minute, and so might be more likely to carry through with his plan. One of criminal law's most "basic premises," moreover, is the notion that "bad thoughts alone cannot constitute a crime." LaFave, *supra*, § 11.4.

Second, unless and until the suspect's behavior manifests the firm commitment to perform a criminal act, the risk is too high that we may have simply misinterpreted perfectly legal behavior, particularly when it is borne of customs, practices, or eccentricities that are not widely shared. *See People v. Miller*, 42 P.2d 308, 309 (Cal. 1935) ("[T]here is no evidence[,] as a general rule, that can prove that a particular preparation

---

[15]*See* LaFave, *supra*, § 11.4(c) ("All of us, or most of us, at some time or other harbor what may be described as a criminal intent to effect unlawful consequences. Many of us take some steps—often slight enough in character—to bring the consequences about; but most of us, when we reach a certain point, desist, and return to our roles as law-abiding citizens." (quoting Robert H. Skilton, *The Requisite Act in a Criminal Attempt*, 3 U. Pitt. L. Rev. 308, 310 (1937)).

was designed for a particular end. Thus a gun may be bought as well for hunting as for homicide." (citation and quotation marks omitted)). On the other hand, we do not require the police to wait until the bank robber actually pulls out the gun and demands access to the vault; delaying that long would unnecessarily endanger public safety. *See* LaFave, *supra*, § 11.2(b) ("[P]olice must be allowed 'a reasonable margin of safety after the intent to commit the crime was sufficiently apparent to them.' " (quoting *Bell v. State*, 163 S.E.2d 323, 325 (Ga. Ct. App. 1968)).

**[9]** The "substantial step" standard must therefore balance competing considerations. The criminal law of attempt does not assume the worst of people. Instead, through the substantial step requirement, it gives some benefit of the doubt, waiting to brand one a criminal until that moment when we can say with some measure of assurance that a particular act is taken with a criminal purpose that, but for timely intervention, would have been fully realized. *See Saavedra-Velazquez*, 578 F.3d at 1107; *Goetzke*, 494 F.3d at 1237.

**B.**

We applied the foregoing principles in a case similar to this one in *Ngaeth*. There, as here, the Government argued that the immigrant's prior conviction under California Penal Code § 459 constituted a generic attempted theft offense, and therefore an aggravated felony. *See* 545 F.3d at 799. Whereas Hernandez-Cruz pleaded guilty to "enter[ing] a commercial building . . . with the intent to commit larceny and any felony," the immigrant in *Ngaeth* had pleaded guilty to "enter-[ing] a locked motor vehicle . . . with the intent to commit theft." *Id.* (alterations and omissions in original, quotation marks omitted).

There was no dispute in *Ngaeth* that the first element of the generic offense—"an intent to commit a theft offense," *id.* at 801—was met, as the count to which the immigrant pleaded

guilty charged him with entering the locked vehicle "with the intent to commit theft."[16] *See id.* at 802 (quotation marks omitted). The only remaining question was whether Ngaeth had necessarily admitted the second element of the generic offense: a substantial step toward the commission of the intended theft offense. *Id.* at 801. *Ngaeth* held that he had, as "entering a 'vehicle . . . when the doors are locked' clearly constitutes a substantial step towards committing a theft." *Id.* at 802 (quoting Cal. Penal Code § 459 (omission in original)).

The logic underlying that holding is plain: there are few legitimate, lawful reasons to break into a locked vehicle. Certainly, the larger context might matter, but a reasonable observer likely could conclude that someone breaking into a locked vehicle is about to commit a theft offense (either of the automobile or of something it contains).[17] Having gone that far in committing such an offense, moreover, the suspect is unlikely to desist before completing the crime. In short, breaking into a locked vehicle strongly corroborates a criminal purpose to commit a theft offense; therefore, it can be a substantial step supporting attempt liability. *See* Model Penal Code § 5.01(2)(d) (listing several types of conduct that a jury could find constitute a substantial step, including the "*unlawful* entry of a . . . vehicle . . . in which it is contemplated that the crime will be committed" (emphasis added)).

---

[16]There was also no dispute in *Ngaeth* that the immigrant's intent in breaking into the locked vehicle was to commit a *generic* theft offense, as opposed to some other kind of theft offense included in California's larceny statute, Cal. Penal Code § 484, which criminalizes some conduct, such as theft of labor and false credit reporting, that do not meet the generic definition. *See United States v. Corona-Sanchez*, 291 F.3d 1201, 1208 (9th Cir. 2002) (en banc), *superseded on other grounds by* U.S.S.G. § 2L1.2, cmt. n.4 (2002); *see also Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189-90 (2007).

[17]Of course, there are circumstances under which someone might lawfully break into a locked car—in particular, if she owns the vehicle, but has lost the key. But it is not likely that someone in that situation would have the intent required to violate the statute.

**[10]** Turning to Hernandez-Cruz's case, it should be appar-
ent that entering a commercial building in no way corrobo-
rates a criminal purpose to commit a theft offense, much less
strongly so. Unlike breaking into a locked vehicle, there is no
reason to suspect that someone intends to commit a theft
offense from his mere entry into a commercial building, at
least when he does so during normal business hours, as
Hernandez-Cruz did. While entering a supermarket is, of
course, a *necessary* step toward shoplifting therein, the entry
alone gives no indication that "the crime will take place
unless interrupted by independent circumstances," *Morales-
Perez*, 467 F.3d at 1222 (citation and quotation marks omit-
ted). Not only does everyone who goes to the supermarket for
entirely lawful purposes act in precisely the same manner, but
their numbers dwarf the number of people who enter intend-
ing to shoplift. To hold that simply entering the building sup-
ports attempt liability is to abandon altogether the requirement
that the "substantial step" permit the reasonable observer to
discriminate between those with a criminal purpose and those
without. *See Walters*, 45 F.3d at 1359. In short, entering a
commercial building freely open to the public is not strongly
corroborative of a criminal intent, and therefore cannot be a
substantial step toward a theft offense. *See Hofus*, 598 F.3d at
1174; *Saavedra-Velazquez*, 578 F.3d at 1110; *Goetzke*, 494
F.3d at 1237; *Gracidas-Ulibarry*, 231 F.3d at 1192; *Walters*,
45 F.3d at 1359; *cf.* Model Penal Code § 5.01(2)(d) (stating
that a jury could find that the "*unlawful* entry of a structure"
is a substantial step towards the commission of a crime
therein (emphasis added)).[18]

---

[18]State courts called upon to consider what actions support a conviction
for attempted shoplifting generally hold that the suspect must have taken
active steps to conceal the merchandise or have attempted to leave the
store without paying, or both. *See, e.g.*, *Illinois v. Falgares*, 328 N.E.2d
210, 211 (Ill. App. Ct. 1975) ("The substantial step was taken when the
defendant placed the merchandise in his bag, and passed a checkout
counter into another department."); *Vaughn v. Indiana*, 426 N.E.2d 113,
115 (Ind. Ct. App. 1981) (holding that the defendant took a substantial
step toward larceny by stuffing a skirt and blouse into his jacket sleeve,

**[11]** Unlike generic attempted theft, California commercial burglary does not have as an element *both* an intent to commit theft *and* an overt act that is a substantial step toward doing so; only an *intent* to commit theft or a felony when entering is required. Even if one assumes, as we are doing, that Hernandez-Cruz intended to commit theft when entering, his guilty plea to commercial burglary did not "necessarily admit," *Shepard*, 544 U.S. at 26, the requisite substantial step, as mere entry cannot be such a step. In sum, Hernandez-Cruz's convictions under § 459 were not for generic attempted theft offenses. Consequently, they are not aggravated felonies, and Hernandez-Cruz is not removable under 8 U.S.C. § 1227(a)(2)(A)(iii) by reason of their commission.

## II.

The INA does not define the term "moral turpitude" or list CIMTs. So the BIA must consider on a case-by-base basis

---

and commenting that: "Packing a store's garments into the sleeve of a jacket is a most peculiar manner of shopping. These actions were more than a trivial, preliminary step in the course of executing a theft."); *Missouri v. Shivelhood*, 946 S.W.2d 263, 266 (Mo. Ct. App. 1997) ("Defendant's act of concealing the items in the shopping cart with a coat was a 'substantial step' towards the commission of that offense. His actions were strongly corroborative of the firmness of his intent to steal the items he concealed under the coat, and were indicative of his purpose to complete the theft."); *Ohio v. McGhee*, 2007 Ohio 6527, ¶ 20 (Ohio Ct. App. 2007) (finding a substantial step toward larceny when the defendant, while in a Rite Aid store, "removed merchandise from different aisles, placed the items on a shelf, and stuffed them into a plastic 'Rite Aid' shopping bag . . . [and] secured the plastic bag from his coat pocket"); *cf. North Carolina v. Jacobs*, 230 S.E.2d 550, 551-52 (N.C. Ct. App. 1976) (reversing an attempted robbery conviction because the defendant's entry into a hardware store with a pistol on his belt "raises a suspicion that [he] may have intended to commit a robbery or other crime but falls short of showing an overt act in furtherance of an intent to rob"). We are unaware of any case holding that merely entering a commercial building during normal business hours constitutes a substantial step toward larceny, and the Government has not cited any.

whether a particular crime involves moral turpitude. *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 908 (9th Cir. 2009) (en banc). The BIA's determination that a petitioner has been convicted of a CIMT proceeds in two steps, with different standards of review applying to each step. *Id.* at 907-08.

"First, the BIA must identify the elements of the statute necessary to secure a conviction." *Uppal v. Holder*, 605 F.3d 712, 714 (9th Cir. 2010). The BIA has no special expertise in construing state and federal criminal statutes, so we review de novo its determination at step one. *Id.* "Second, once it identifies the elements of the statute, the BIA must compare those elements to the generic definition of a crime involving moral turpitude and decide whether they meet the definition." *Id.*; *see also Mendoza v. Holder*, 623 F.3d 1299, 1302-03 (9th Cir. 2010); *Fregozo v. Holder*, 576 F.3d 1030, 1035 (9th Cir. 2009); *Morales-Garcia v. Holder*, 567 F.3d 1058, 1066 n.4 (9th Cir. 2009); *Marmolejo-Campos*, 558 F.3d at 911-12. As to this stage, we do owe some deference to the BIA's expertise in interpreting the ambiguous term "moral turpitude." Therefore, if the BIA's decision under review is precedential, or is an unpublished order relying on a prior precedential opinion, we accord that determination *Chevron* deference. *See Marmolejo-Campos*, 558 F.3d at 911; *see also Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843-45 (1984). If, on the other hand, the decision is unpublished and does not rely on a precedential opinion, we apply *Skidmore* deference, meaning that we defer to the BIA's determination "only to the extent that it has power to persuade." *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 625 (9th Cir. 2010); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Marmolejo-Campos*, 558 F.3d at 909. The decision here falls into the latter category, so we apply *Skidmore* deference at the second step of the CIMT analysis. Because we conclude that the BIA's reasoning is unpersuasive, we do not defer to it, and instead make our own inquiry.

**A.**

We begin by first identifying the elements of Hernandez-Cruz's crimes of conviction. As already mentioned, a conviction under California Penal Code § 459 requires proof of three essential elements; in Hernandez-Cruz's case, we know from the record of conviction that he was convicted of that portion of the statute that criminalizes (1) entering (2) a commercial building (3) with the intent to commit larceny or any felony. *See* Cal. Penal Code § 459; *Davis*, 958 P.2d at 1085.

**[12]** In holding that Hernandez-Cruz was convicted of two CIMTs, the BIA stated that "both of [Hernandez-Cruz's] burglary convictions resulted from pleas in which he stipulated, through counsel, that he had entered buildings with the intent to commit larceny, a CIMT in the Ninth Circuit." In support of that proposition, the BIA's decision cited *Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1020 (9th Cir. 2005). In fact, *Cuevas-Gaspar* considered a conviction under *Washington's* residential burglary statute, which varies substantially from California's burglary statute here at issue. *See id.* at 1019. The Washington statute, for example, applies only to "a dwelling other than a vehicle," and requires that the defendant "enter[ ] or remain[ ] unlawfully." *Id.* (quoting Wash. Rev. Code § 9A.52.025(1)). In holding that a crime with those elements was a CIMT, *Cuevas-Gaspar* was not addressing an offense involving lawful entry into a commercial building open to the public at large.

**[13]** The BIA's brief analysis makes it impossible to be certain exactly what it meant, but it is apparent that the BIA either misapprehended the elements of the California burglary offense or read the holding of *Cuevas-Gaspar* as much broader than it actually was. Either way, the BIA's reasoning is decidedly not persuasive, and so we do not defer to it under *Skidmore*. As the BIA erred at step one, we owe its CIMT analysis at step two no deference. *See Uppal*, 605 F.3d at 715 ("Because the BIA failed to identify the elements of [the stat-

ute of conviction] correctly, its CIMT analysis, in which it compares the elements it has identified to the generic definition of moral turpitude, is misdirected and so merits no deference from this Court."); *Morales-Garcia*, 567 F.3d at 1066 n.4 (same).

## B.

**[14]** We next must compare the elements that Hernandez-Cruz necessarily admitted—entering a commercial building with the intent to commit larceny or any felony—"to the generic definition of a crime involving moral turpitude and decide whether they meet the definition." *Uppal*, 605 F.3d at 714; *see also Fregozo*, 576 F.3d at 1034 ("The second inquiry requires . . . defining a particular removable offense and applying that definition to a petitioner's state conviction."). In doing so, we keep in mind that "[w]hether a crime involves moral turpitude 'is determined by the statutory definition or by the nature of the crime [and] not by the specific conduct that resulted in the conviction.' " *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1070 (9th Cir. 2007) (en banc) (citation omitted, last alteration in original). In other words, "[c]ounterfactual and counterintuitive though it often appears to be, we do not consider the particular facts of the convictions." *Tijani v. Holder*, 628 F.3d 1071, 1075 (9th Cir. 2010), *cert. denied*, 131 S. Ct. 2160 (2011).[19]

---

[19]After the BIA entered its order in this case, the Attorney General issued *In re Silva-Trevino*, 24 I. & N. Dec. 687 (BIA 2008), which purports to permit the BIA to look beyond the elements of the crime of conviction "to resolve accurately the moral turpitude question." *Id.* at 704. Because the BIA did not rely on *Silva-Trevino* in this case, we cannot consider whether *Silva-Trevino* can be reconciled with our precedent. *See Marmolejo-Campos*, 558 F.3d at 907 n.6 ("As th[e] question is not squarely before us, we reserve judgment as to the validity of that portion of our prior case law which suggests review should be more confined [than that permitted by *Silva-Trevino*]."); *see also Guardado-Garcia v. Holder*, 615 F.3d 900, 902 (8th Cir. 2010) ("[T]o the extent *Silva-Trevino* is inconsistent, we adhere to circuit law."); *Jean-Louis v. Att'y Gen.*, 582

There are a few established CIMTs that have elements *similar* to those Hernandez-Cruz admitted, but none are a match. For example, had Hernandez-Cruz been convicted of a crime requiring proof that he had "*unlawfully* enter[ed] a *residence* with intent to commit theft or larceny therein," such a conviction would be a CIMT. *Cuevas-Gaspar*, 430 F.3d at 1020 (emphases added). As mentioned, however, the elements of Hernandez-Cruz's convictions did not involve a residence and did not require the entry to be unlawful.

Similarly, had Hernandez-Cruz been convicted of a generic theft offense—the "taking of property or an exercise of control over property without consent with the criminal intent to deprive the owner of rights and benefits of ownership," *Arteaga*, 511 F.3d at 947 (internal quotation marks omitted)—that, too, likely would be a CIMT. *See United States v. Esparza-Ponce*, 193 F.3d 1133, 1136-37 (9th Cir. 1999); *In re Jurado Delgado*, 24 I. & N. Dec. 29, 33-34 (BIA 2006). But as the BIA itself noted in this case, § 459 does not have as an element the taking of property, and therefore cannot be a generic theft offense.

Finally, were Hernandez-Cruz's convictions for generic *attempted* theft offenses, we would likely conclude that they were for CIMTs. *See Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007) ("We have previously looked to underlying crimes in determining whether convictions for

F.3d 462, 470 (3d Cir. 2009) (rejecting "*Silva-Trevino*'s novel approach" in favor of "the modified categorical approach that we have historically applied"). Although it mentions *Silva-Trevino*, the Government neither briefed whether we should follow *Silva-Trevino*, despite its conflict with our prior case law, nor argued that we should remand for the BIA to consider Hernandez-Cruz's convictions under *Silva-Trevino* in the first instance. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding that an argument not addressed in an answering brief is waived). For all these reasons, we decide the case on the basis of the categorical and modified categorical approaches, which the BIA used in this case.

inchoate offenses constitute crimes involving moral turpitude." (citations omitted)); *In re Khanh Hoang Vo*, 25 I. & N. Dec. 426, 429 (BIA 2011) ("[W]here the substantive offense underlying an alien's conviction for an attempt is a crime involving moral turpitude, the alien is considered to have been convicted of a crime involving moral turpitude."). But as we have already determined, Hernandez-Cruz's convictions do not qualify as generic attempted theft offenses.[20]

As to the other possible bases for holding that the § 459 offenses were CIMTs, the BIA did not hold, nor does the government here argue, that § 459 criminalizes "fraudulent" conduct. *See Tijani*, 628 F.3d at 1075-76; *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring for the majority). Even if we could consider the argument, however, it would fail. "When we analyze a statute to determine whether the conduct it criminalizes is fraudulent, and thus whether the offense qualifies as a crime of moral turpitude, we consider whether the statute meets either of two conditions." *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring for the majority). The first condition is that "intentional fraud is an element of the offense," *id.*, which plainly is not the case here. *See id.*; *see also Blanco v. Mukasey*, 518 F.3d 714, 719-20 (9th Cir. 2008); *Latu v. Mukasey*, 547 F.3d 1070, 1074-75 (9th Cir. 2008).

The second condition that could qualify an offense as a fraud-based CIMT is if the crime is "inherently fraudulent," meaning that the statute of conviction requires "knowingly

---

[20]A generic attempted theft offense for CIMT purposes is defined slightly differently than in the aggravated felony context. Whereas the latter, as we noted earlier, requires "the criminal intent to deprive the owner of rights and benefits of ownership, even if such deprivation is less than total or permanent," *Carrillo-Jaime*, 572 F.3d at 750 (citation and quotation marks omitted), "a permanent taking [must be] intended" for a conviction to qualify as a CIMT. *Castillo-Cruz v. Holder*, 581 F.3d 1154, 1160 n.8 (9th Cir. 2009) (citation, quotation marks, and emphasis omitted). The distinction makes no difference here.

false representations made in order to gain something of value." *Navarro-Lopez*, 503 F.3d at 1076 (Reinhardt, J., concurring for the majority). That condition is also not met here, as the statute of conviction required only that Hernandez-Cruz walk into a commercial building with the intent to commit larceny. It did not require him to make any representations at all, much less false representations on which he intended others to rely to his pecuniary benefit. *See Blanco*, 518 F.3d at 719 ("Fraud . . . does not equate with mere dishonesty, because fraud requires an attempt to induce another to act to his or her detriment. One can act dishonestly without seeking to induce reliance. Our cases have therefore recognized fraudulent intent only when the individual employs false statements to obtain something tangible." (citations omitted)).

Nor is § 459 categorically a CIMT on the ground that it punishes conduct that is "per se morally reprehensible," *Matter of L—V—C—*, 22 I. & N. Dec. 594, 603 (BIA 1999); or that is "base, vile, or depraved." *Navarro-Lopez*, 503 F.3d at 1074 (Reinhardt, J., concurring for the majority). To hold otherwise would mean that someone who did what Hernandez-Cruz admitted doing—walking into a commercial building with the intent to commit larceny—but then changed his mind and walked out without ever committing any crime, would be guilty of a CIMT. As previously discussed, society is not harmed, but benefitted by encouraging moral reasoning about whether to commit a crime. To harbor an inchoate intent to commit a crime, never acted upon, simply does not "shock society's conscience." *Id.* If it did, the phrase "moral turpitude" would be devoid of all meaning.

**[15]** In sum, admitting only the elements that Hernandez-Cruz admitted cannot be a CIMT, as they do not match the elements of any generic crime involving moral turpitude, *see Uppal*, 605 F.3d at 714; qualify as fraudulent conduct, *see Blanco*, 518 F.3d at 719-20; or otherwise constitute acts that are per se morally reprehensible, *see Matter of L—V—C—*, 22 I. & N. Dec. at 603. Consequently, Hernandez-Cruz's crimes

of conviction are not CIMTs, and he is not removable under 8 U.S.C. § 1227(a)(2)(A)(ii) by reason of their commission. The BIA's holding to the contrary, premised either on the mistaken belief that Hernandez-Cruz was convicted of generic burglary or the mistaken belief that this court has held the California commercial burglary offense to be a CIMT, was in error.

## III.

Before concluding, we address what appears to be the Government's fallback position: Even if the elements of the offenses to which Hernandez-Cruz pleaded guilty do not, by themselves, qualify his crimes as either aggravated felonies or CIMTs, we can look beyond the elements to examine the underlying facts. That examination reveals that, as a factual matter, Hernandez-Cruz was arrested after leaving grocery stores with food and alcohol he had not paid for. The Government argues that from these facts, we can hold that Hernandez-Cruz took a "substantial step" toward a generic attempted theft offense by walking out of the stores with carts containing items he had not purchased, and therefore, committed a generic attempted theft offense. Similarly, the Government argues that the facts underlying Hernandez-Cruz's convictions demonstrate that he is removable for having twice been convicted for conduct that amounts to generic theft, which is a CIMT. *See Castillo-Cruz*, 581 F.3d at 1159. There are, however, several reasons why the Government's argument fails, which we discuss briefly.

First, the Government advances arguments that the BIA never considered and on which the BIA's decision does not rely.[21] But we can neither "accept appellate counsel's post hoc rationalizations for agency action" nor "supply a reasoned

---

[21]The Government did not file a brief with the BIA when Hernandez-Cruz appealed, choosing instead to file a one-page motion for summary affirmance containing only boilerplate language.

basis for the agency's action that the agency itself has not given." *Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 688 (9th Cir. 2007) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962), and *Bowman Transp., Inc. v. Ark.—Best Freight Sys., Inc.*, 419 U.S. 281, 285-86 (1974) (quotation marks omitted)). Instead, our review is limited to "[t]he grounds upon which . . . the record discloses that [the agency's] action was based." *SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943); *see also Azanor v. Ashcroft*, 364 F.3d 1013, 1021 (9th Cir. 2004) ("[W]e must decide whether to grant or deny the petition for review based on the Board's reasoning rather than our own independent analysis of the record."); *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency."). Thus, we cannot deny a petition for review on a ground that the BIA itself did not base its decision.

Second, the Government's argument relies on an inquiry that is beyond what is permitted under the modified categorical approach, which is concerned only with the crime of which the defendant was convicted, and not with his *conduct*. *See Shepard*, 544 U.S. at 22 (prohibiting courts from examining the factual circumstances underlying the prior convictions even where "the records of the prior convictions . . . are in each instance free from any inconsistent, competing evidence on the pivotal issue of fact separating generic from nongeneric [offense]"); *Ngaeth*, 545 F.3d at 801. Although Hernandez-Cruz did stipulate that the police reports provided a factual basis for his guilty pleas, that stipulation only permits us to examine the police reports to determine the precise crime that he committed—i.e., that it was a commercial building, and not a dwelling (or some other structure listed in the statute) that he admitted entering. As the BIA recognized in reversing the IJ upon Hernandez-Cruz's first appeal, just because the defendant stipulated that a police report (or some other document) contains the factual basis for his plea does not change the focus of the modified categorical approach,

which remains on the *crime* the defendant was convicted of committing, not his underlying conduct. *See, e.g.*, *Parrilla v. Gonzales*, 414 F.3d 1038, 1044 (9th Cir. 2005) ("In light of [the defendant's] incorporation of the [police report] in his guilty plea, relying upon the [police report] *to establish the elements of the crime* to which [the defendant] pled guilty does not undermine the purposes of our limited modified categorical inquiry." (emphasis added)); *see also United States v. Lewis*, 405 F.3d 511, 515 (7th Cir. 2005) ("The list in *Shepard* is designed to identify documents that illuminate *what crime* the defendant committed . . . . What matters is the fact *of* conviction, rather than the facts *behind* the conviction.").

Third and finally, the Government's argument, if accepted, would effectively rob Hernandez-Cruz of a benefit of the bargain that he struck with the state of California. Recall that, with regard to both of the criminal episodes in question, Hernandez-Cruz was charged in criminal complaints that contained two counts: the first counts charged burglary under § 459, and the second counts were for petty theft under §§ 484(a) and 666. If it meets the generic definition of theft under the modified categorical approach, a conviction under § 484(a), California's theft statute, can qualify as both an aggravated felony and a CIMT. *See Carrillo-Jaime*, 572 F.3d at 751-52 (aggravated felony); *Castillo-Cruz*, 581 F.3d at 1160 (CIMT); *see generally Corona-Sanchez*, 291 F.3d at 1208.

But Hernandez-Cruz did not plead guilty to the theft charges, because they were dismissed as part of plea bargains. Those bargains provided benefits to both parties. The state secured convictions on the charges that are punished more harshly under state law without incurring the expense and hassle of a trial.[22] Hernandez-Cruz, for his part, agreed to

---

[22]The theft offense that was dismissed in each of the two prosecutions at issue in this case was punishable by no more than a year in jail, *see* Cal. Penal Code §§ 490 & 666, whereas Hernandez-Cruz was sentenced to 16 months for the burglary offenses.

plead guilty to a charge that, although more serious, had a smaller chance of causing adverse immigration consequences. *See Padilla v. Kentucky*, 130 S. Ct. 1473, 1483 (2010) ("We . . . have previously recognized that '[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.' " (quoting *INS v. St. Cyr*, 533 U.S. 289, 323 (2001) (second alteration in original)); *St. Cyr*, 533 U.S. at 322 ("There can be little doubt that, as a general matter, alien defendants considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions.").

The Government asks us to ignore the deal made by Hernandez-Cruz and the state, and order him removed on the basis of unconvicted conduct. The Supreme Court contemplated this very scenario in *Taylor*, and forbade us from disregarding the offense to which the defendant actually pleaded guilty in favor of the dismissed charge. *See Taylor*, 495 U.S. at 601-02 ("Even if the Government were able to prove [facts constituting generic burglary], if a guilty plea to a lesser, non-burglary offense was the result of a plea bargain, it would seem unfair to impose a sentence enhancement as if the defendant had pleaded guilty to burglary."). Not only would it be unfair to the defendant, but it would also weaken the incentives for defendants to accept plea bargains in the first place, which could have serious consequences for trial courts, especially in the state system.

Moreover, the Government's argument, if accepted, would make a mockery of the affirmative obligation that criminal defense attorneys have to advise their non-citizen clients of the potential immigration consequences of accepting a plea bargain (and of pleading guilty more generally). *See Padilla*, 130 S. Ct. at 1486. As explained in *Padilla*:

> [I]nformed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing

deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties. As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel . . . may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequence. At the same time, the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does.

*Id. See also United States v. Bonilla*, 637 F.3d 980, 986 (9th Cir. 2011) (holding that defense counsel's inadequate legal advice regarding the immigration consequences of a guilty plea constituted a "fair and just" reason for withdrawing the plea under Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure). Were we free to disregard the plea bargain, then there would be little reason to require criminal defense attorneys to inform their clients of the possibility of deportation; no reason to "plea bargain creatively" to avoid that outcome; and little incentive for non-citizens to ever plead guilty—far better for them to go to trial and hope for an outright acquittal.

We decline the Government's invitation to sacrifice the vital role in our criminal justice system that the plea bargaining process plays for the sake of more expeditious civil removal proceedings.

## IV.

The BIA erred in holding that Hernandez-Cruz's convictions qualified as generic attempted theft offenses, and thereby, aggravated felonies under 8 U.S.C.

§ 1227(a)(2)(A)(iii). It also erred in holding that the convictions were for generic burglary, qualifying them as CIMTs under 8 U.S.C. § 1227(a)(2)(A)(ii), or in reading our case law as holding that California commercial burglary is a CIMT. And the BIA has already held that the convictions do not qualify as generic theft offenses. The Government has not argued that Hernandez-Cruz's convictions meet the definition of some other generic crime qualifying them as either aggravated felonies or CIMTs. As the BIA has ruled on the Government's theories of removability, a remand "would be both unnecessary and inappropriate." *Ruiz-Vidal v. Gonzales*, 473 F.3d 1072, 1080 (9th Cir. 2007); *see also Saavedra-Figueroa*, 625 F.3d at 628-29; *Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132-35 (9th Cir. 2006) (en banc).

**PETITION GRANTED; ORDER OF REMOVAL VACATED.**