# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

RIGOBERTO AGUILAR-TURCIOS,

*Petitioner,*

v.

ERIC H. HOLDER Jr., Attorney General,

*Respondent.*

No. 06-73451

Agency No.
A045-301-132

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
March 21, 2012—San Francisco, California

Filed August 15, 2012

Before: William A. Fletcher, Richard A. Paez, and
Jay S. Bybee, Circuit Judges.

Opinion by Judge Paez;
Dissent by Judge Bybee

9219

**COUNSEL**

David B. Landry, San Diego, California, for petitioner Rigoberto Aguilar-Turcios.

Steven F. Hubacheck, Federal Defenders of San Diego, Inc., San Diego, California, amicus for petitioner Rigoberto Aguilar-Turcios.

Andrew C. MacLachlan (argued), Tony West, Assistant Attorney General, Donald E. Keener, Deputy Director, Robert N. Markle, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for respondent Eric H. Holder Jr., Attorney General.

## OPINION

PAEZ, Circuit Judge:

In this petition for review of a decision by the Board of Immigration Appeals (BIA or Board), we address whether Petitioner Rigoberto Aguilar-Turcios' conviction under Article 92 of the Uniform Code of Military Justice (UCMJ) qualifies as an "aggravated felony" under the modified categorical approach as explained by our recent en banc decision in *United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011). For the reasons discussed below, we conclude that Aguilar-Turcios' Article 92 conviction is not an aggravated felony. We therefore grant the petition and remand this case to the BIA with instructions to vacate the removal order against him.

## I.

Aguilar-Turcios is a citizen and native of Honduras who came to the United States as a legal permanent resident (LPR) in 1996. He married his wife, Vicenta, in June of 2000, shortly before he enlisted in the United States Marine Corps. They have at least one child together.

While in the Marine Corps, Aguilar-Turcios used a government computer to access pornographic Internet sites and to download pornographic images of female minors.

*Court Martial — 2003*

In 2003, Aguilar-Turcios pleaded guilty to and was convicted by special court-martial of violating UCMJ Article 92,

which prohibits "violat[ing] or fail[ing] to obey any lawful general order or regulation," *see* 10 U.S.C. § 892(1), and UCMJ Article 134, which renders punishable, *inter alia*, "all conduct of a nature to bring discredit upon the armed forces," *see id.* § 934.

In particular, Aguilar-Turcios pleaded guilty to violating UCMJ Article 92 as a result of his violation of Department of Defense (DOD) Directive 5500.7-R § 2-301(a), which provides that government computers "shall be for official use and authorized purposes only" and that such "authorized purposes" do not include "uses involving pornography."

Aguilar-Turcios also pleaded guilty to and was convicted of bringing discredit upon the armed forces under UCMJ Article 134 by "wrongfully and knowingly possess[ing] visual depictions of minors engaging in sexually explicit conduct, which conduct was prejudicial to good order and discipline of the armed forces."

The Military Judge (MJ) sentenced Aguilar-Turcios to ten months of confinement, a pay-grade reduction, and a bad-conduct discharge from the Marine Corps.

*Removal Proceedings — 2005*

In 2005, the federal government initiated removal proceedings against Aguilar-Turcios, charging him as removable under 8 U.S.C. § 1227(a)(2)(A)(iii) for having been convicted of an aggravated felony. In particular, the government alleged that Aguilar-Turcios' convictions under UCMJ Articles 92 and 134 amounted to violations of 18 U.S.C. § 2252(a)(2)[1]

---

[1]Section 2252(a)(2) makes it a felony to "knowingly receive[ ], or distribute[ ], any visual depiction . . . , or knowingly reproduce[ ] any visual depiction for distribution . . . , if — (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct."

and (a)(4),[2] both of which address conduct involving child pornography, and therefore qualified as aggravated felonies under 8 U.S.C. § 1101(a)(43)(I).[3]

*Agency Decisions — 2006*

The Immigration Judge (IJ) assigned to Aguilar-Turcios' removal proceeding determined that neither the Article 92 nor the Article 134 violations categorically qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(I). Turning to the modified categorical approach, the IJ first held that Aguilar-Turcios' Article 134 conviction was not an aggravated felony because Article 134 does not refer to child pornography and he was not persuaded that a charge of specific facts becomes an element of Article 134.[4] The IJ reached the opposite conclusion for Aguilar-Turcios' Article 92 conviction, concluding that because "child pornography is a subset of pornography" and Aguilar-Turcios pleaded guilty to a charge containing the phrase "minor engaging in sexually explicit conduct"—the same language that appears in § 2252(a)(2) and (a)(4)—Aguilar-Turcios' Article 92 conviction qualified as an aggravated felony.[5]

Aguilar-Turcios appealed the IJ's Article 92 decision to the

---

[2]The version of 18 U.S.C. § 2252(a)(4)(A) that was in effect until 2008 made it a felony to "knowingly possess[ ] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . , if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct."

[3]Section 1101(a)(43)(I) defines "aggravated felony" as "an offense described in section 2251, 2251A, or 2252 of Title 18 (relating to child pornography)."

[4]The IJ also commented that "clearly, he was convicted of conduct which is punishable under 18 U.S.C. [§ ] 2252."

[5]The IJ's oral decision does not address the fact that the phrase "minor engaging in sexually explicit conduct" from § 2252(a)(2) and (a)(4) only appears in the Article 134 charge, not the Article 92 charge.

BIA. The government did not appeal the Article 134 ruling. The BIA affirmed the IJ's decision in a per curiam order.

*Initial Ninth Circuit Decision — 2009*

Aguilar-Turcios petitioned for review of the BIA's order, and we granted the petition and remanded the case to the BIA.[6] *Aguilar-Turcios v. Holder*, 582 F.3d 1093, 1094, 1098 (9th Cir. 2009), *withdrawn by* 652 F.3d 1236 (9th Cir. 2011). Like the IJ, we concluded that an Article 92 conviction for violating DOD Directive 5500.7-R § 2-301(a) is not categorically an aggravated felony.

We also held that the modified categorical approach did not apply at all to the analysis of whether Aguilar-Turcios' Article 92 conviction was an aggravated felony. We applied the so-called "missing element rule" from *Navarro-Lopez v. Gonzales*, 503 F.3d 1063 (9th Cir. 2007) (en banc), which limited the application of the modified categorical approach to statutes of conviction that are divisible into several crimes and barred application of the rule where a statute of conviction was "missing" an element of the generic crime. Concluding that both Article 92 and DOD Directive 5500.7-R § 2-301(a) were "missing" the element of "a visual depiction of a minor engaging in sexually explicit conduct," we held that the modified categorical approach did not apply and that Aguilar-Turcios' Article 92 conviction was therefore not an aggravated felony.

Judge Bybee dissented, calling into question the validity and wisdom of the *Navarro-Lopez* "missing element rule" and concluding that Aguilar-Turcios' Article 92 conviction "nec-

---

[6]While Aguilar-Turcios' appeal was pending before this court, and an order was in place staying his removal, the government mistakenly removed Aguilar-Turcios to Honduras. Although his whereabouts were unknown as of the date of publication of our initial opinion in this case, his counsel has since been in contact with him via e-mail.

essarily shows that he committed the aggravated felony of knowing possession of child pornography" because "[t]he only pornography that Aguilar-Turcios admitted to accessing on his government computer during the plea colloquy were the six images of child pornography."

Following publication of our original opinion in this case, the government filed a petition for rehearing en banc. The petition sought reconsideration of the *Navarro-Lopez* rule. Before we could rule on the government's petition, a majority of the court's active judges granted rehearing in another case, *United States v. Aguila-Montes de Oca* ("*Aguila-Montes*"), to consider the same question. We therefore held this case in abeyance pending the en banc opinion in *Aguila-Montes*.

*Aguila-Montes — 2011*

*Aguila-Montes* overruled *Navarro-Lopez*'s "missing element rule." 655 F.3d at 916-17. As a result of the holding in *Aguila-Montes*, we withdrew our original opinion in this case and requested supplemental briefing from the parties on the question of what effect, if any, the *Aguila-Montes* decision had on the outcome of Aguilar-Turcios' case. *Aguilar-Turcios*, 652 F.3d at 1236. Having considered the supplemental briefing, we revisit the merits of this case.

## II.

### A.

We review de novo the BIA's determinations of questions of law and legal conclusions. *Tamang v. Holder*, 598 F.3d 1083, 1088 (9th Cir. 2010). "[W]hether an offense constitutes an aggravated felony for which an alien is removable" is a question of law reviewed de novo. *Carrillo-Jaime v. Holder*, 572 F.3d 747, 750 (9th Cir. 2009) (citing *Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 909 (9th Cir. 2004)).

**B.**

Generally, we have jurisdiction to review final orders of removal under 8 U.S.C. § 1252(a)(1). We lack jurisdiction, however, to review final orders of removal against aliens who have committed certain criminal offenses, including aliens convicted of aggravated felonies. *See id.* § 1252(a)(2)(C). Of course, we have jurisdiction to determine our own jurisdiction. *See Luu-Le v. INS*, 224 F.3d 911, 914 (9th Cir. 2000). Because our resolution of the merits of whether Aguilar-Turcios' Article 92 conviction qualifies as an aggravated felony under federal law determines whether we have jurisdiction over his final order of removal, "the jurisdictional question and the merits collapse into one." *Id.* (quoting *Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir. 2000) (internal quotation marks omitted)). If we determine that Aguilar-Turcios' Article 92 conviction is not an aggravated felony, then we have jurisdiction over the final order of removal and must grant his petition; if we determine, however, that it is an aggravated felony, we lose our jurisdiction and the agency has the final word on Aguilar-Turcios' removal.

**III.**

The question before us is whether Aguilar-Turcios' UCMJ Article 92 conviction qualifies as an aggravated felony under the modified categorical approach.[7] Applying the modified categorical approach as explained in *Aguila-Montes*, we hold that Aguilar-Turcios' Article 92 conviction is not an aggravated felony because the facts on which his conviction "necessarily rested" do not satisfy the elements of either 18 U.S.C. § 2252(a)(2) or (a)(4).[8]

---

[7]We originally held that Aguilar-Turcios' Article 92 conviction is not categorically an aggravated felony. On rehearing, the parties do not challenge that determination. Therefore, we limit our discussion to the modified categorical approach.

[8]Aguilar-Turcios argues that *Aguila-Montes* should be applied prospectively only, because it "represents a clean break from past precedent, and

## A.  The Modified Categorical Approach

**[1]**  "The categorical and modified categorical frameworks, first outlined by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), establish the rules by which the government may use prior state convictions to enhance certain federal sentences and to remove certain aliens."[9] *Aguila-Montes*, 655 F.3d at 917 (internal citation omitted). Importantly, the categorical and modified categorical approaches look only to

---

because of the reliance interests of aliens pleading guilty prior to it." Aguilar-Turcios' argument is unconvincing. We recently held that *Aguila-Montes* applies retroactively whether or not a petitioner had a reliance interest on *Navarro-Lopez*, the case that *Aguila-Montes* overruled. *Flores-Lopez v. Holder*, 08-75140, slip op. 7905, 7919 n.3 (9th Cir. Jul. 9, 2012); *Robles-Urrea v. Holder*, 678 F.3d 702, 712 n.9 (9th Cir. 2012).

In *Robles-Urrea*, we held that *Aguila-Montes* applies retroactively where a noncitizen's conviction became final prior to our 2007 decision in *Navarro-Lopez*, because he could not have relied on the missing element rule when he pleaded guilty. 678 F.3d at 712 n.9. Similarly, Aguilar-Turcios pleaded guilty and his conviction became final in 2003, long before our *Navarro-Lopez* decision.

In *Flores-Lopez*, we held that *Aguila-Montes* applies retroactively even where a noncitizen may have relied on the *Navarro-Lopez* rule. Slip op. at 7919 n.3. This is because *Aguila-Montes* "eliminated the 'missing element' rule without indicating whether the rule would apply prospectively only. Therefore, the 'default principle' applies and the rule should apply to all cases currently pending before the Courts . . . ." *Id.*

*Aguila-Montes* therefore applies retroactively to all cases pending before this court, including this one.

[9]We have found no other case from our circuit or our sister circuits discussing the application of the categorical and modified categorical approaches to convictions under the UCMJ, although clearly the federal government does rely on UCMJ convictions to remove noncitizens. *See United States v. Denedo*, 556 U.S. 904, 907-08 (2009). In light of our disposition of this case, we assume without deciding that a conviction under the UCMJ may provide a proper basis for the government to initiate removal proceedings against a lawful permanent resident alien, and that we may look not only to the UCMJ but to the elements of a lawful general order like that at issue in this case when applying the modified categorical approach.

the prior *conviction*, not to the facts outside the record of conviction. As the Supreme Court recently stated, the categorical approach requires that federal courts "look[ ] to the statute defining the crime of conviction, rather than to the specific facts underlying the crime." *Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012); s*ee also Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2589 (2010) ("[T]he defendant must *also* have been *actually convicted* of a crime that is itself punishable as a felony under federal law. The mere possibility that the defendant's conduct, coupled with facts outside of the record of conviction, could have authorized a felony conviction under federal law is insufficient to satisfy the statutory command that a noncitizen be 'convicted of a[n] aggravated felony' . . . ."); *Aguila-Montes*, 655 F.3d at 928 (noting that courts are required to "focus on what the defendant was convicted of rather than the acts he committed").

We have identified two important goals served by this limited inquiry into a past conviction: "First, it confines our inquiry to the fact of conviction and avoids the need to rummage through the 'actual proof at trial' to see 'whether the defendant's conduct constituted [a] generic [offense],' " preventing any possible " 'trial over trials.' " *Aguila-Montes*, 655 F.3d at 928 (quoting *Taylor*, 495 U.S. at 601). "Second, by relying exclusively on the crime of conviction, we avoid situations where the government arguably could prove that the defendant actually committed a greater offense, one that would satisfy the generic crime, but would deprive the defendant of the benefit of his conviction for (or plea to) a lesser crime." *Id.* at 928-29.

In applying the categorical approach, we compare the statute of conviction with the generic federal offense "to determine whether the latter encompasses the former." *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1100 (9th Cir. 2011). When the statute of conviction requires proof of the same elements as the generic federal offense, or is narrower than the generic federal offense, the state conviction is "categorically" the

equivalent of the federal offense. *See Taylor*, 495 U.S. at 599; *Aguila-Montes*, 655 F.3d at 920.

When the statute of conviction is broader than the generic federal offense, however, the modified categorical approach applies. The modified categorical approach requires that we "determine, in light of the facts in the judicially noticeable documents, (1) what facts the conviction necessarily rested on (that is, what facts the trier of fact was actually required to find); and (2) whether these facts satisfy the elements of the generic offense." *Aguila-Montes*, 655 F.3d at 940. Judicially noticeable documents, also known as *Shepard* documents, are limited to:

> (1) charging documents; (2) the terms of a written plea agreement; (3) transcripts of a plea colloquy between a judge and the defendant in which the factual basis for the plea was confirmed by the defendant; (4) jury instructions; (5) any explicit factual finding by the trial judge to which the defendant assented; and (6) some comparable judicial record of this information.[10]

*Id.* at 921. Limiting a court's inquiry to such documents provides "the 'certainty of a generic finding' " and "avoid[s] 'evidentiary disputes.' " *Id.* at 937 (quoting *Shepard v. United States*, 544 U.S. 13, 23 n.4, 24 (2005)).

**[2]** We counseled in *Aguila-Montes* that we "must exercise caution" when determining upon what facts a prior conviction necessarily rested. *Id.* "It is not enough that an indictment merely allege a certain fact or that the defendant admit to a fact." *Id.* Instead, to conclude that "the factfinder necessarily found the elements of the generic crime," the modified cate-

---

[10]We have held that documents of "equal reliability," such as a state court's minute order, may also be considered. *United States v. Snellenberger*, 548 F.3d 699, 701-02 (9th Cir. 2008) (en banc).

gorical approach requires that "the defendant could not have been convicted of the offense of conviction *unless* the trier of fact found the facts that satisfy the elements of the generic crime." *Id.*

We reject the dissent's call to deviate from clearly-established precedent and apply a less demanding modified categorical approach in immigration cases. Dissent at 9266-68. We have repeatedly applied the modified categorical approach as announced in *Taylor*, and *Shepard*'s limitations on judicially noticeable documents, in immigration cases where the government charges that a noncitizen is removable or ineligible for relief on the basis of a prior conviction. *See, e.g.*, *Perez-Mejia v. Holder*, 663 F.3d 403, 410-13 (9th Cir. 2011); *Hernandez-Cruz*, 651 F.3d at 1100; *S-Yong v. Holder*, 600 F.3d 1028, 1035 (9th Cir. 2010). That precedent guides our analysis of the modified categorical approach in this case. *Miller v. Gammie*, 335 F.3d 889, 899-900 (9th Cir. 2003).

Furthermore, we disagree with the dissent's vague "flexible" approach. First, "the concern motivating the entire categorical/modified categorical exercise" is not, in fact, that we "be certain of the *conduct* that an alien *committed* before the alien is removed," Dissent at 9268 (emphases added), but instead that we "focus on what the defendant was *convicted of* rather than the acts he *committed*." *Aguila-Montes*, 655 F.3d at 928 (emphases added). This is not a minor distinction but the linchpin of the categorical and modified categorical approaches.[11]

---

[11]The dissent also argues in favor of a more "flexible" approach in cases "where the *Shepard* documents leave no doubt as to what occurred." Dissent at 9269-70 n.12. Again, what *occurred* is not the focus of our inquiry under the categorical or modified categorical approach. Instead, we focus only on the offense of which the defendant was *convicted. See, e.g.*, *Kawashima*, 132 S. Ct. at 1172; *Carachuri-Rosendo*, 130 S. Ct. at 2589; *Aguila-Montes*, 655 F.3d at 928.

**[3]** Second, the categorical and modified categorical approaches apply in immigration proceedings in the same manner as they do in criminal sentencing proceedings, except in a very narrow class of cases where the statutory definition of the aggravated felony at issue "does not refer to generic crimes but refers to specific circumstances." *Nijhawan v. Holder*, 557 U.S. 29, 129 S. Ct. 2294, 2300 (2009) (discussing 8 U.S.C. § 1101(a)(43)(M)(i)). In recent years, the Supreme Court has repeatedly applied the categorical and modified categorical approaches in immigration cases. *Kawashima*, 132 S. Ct. at 1172; *Carachuri-Rosendo*, 130 S. Ct. at 2586-87; *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-87 (2007). Our sister circuits have also recognized that Congress' use of the term "convicted" in the Immigration and Nationality Act requires application of this framework in immigration cases.[12] *See Farjado v. U.S. Att'y Gen.*, 659 F.3d 1303, 1307 (11th Cir. 2011) ("[C]ourts have consistently held that Congress's use of the term 'conviction,' . . . demonstrated its intent to require adjudicators to apply the categorical and modified categorical approach."); *Jean-Louis v. Att'y Gen.*, 582 F.3d 462, 473-74 (3d Cir. 2009) ("[T]he BIA, prior attorneys general, and numerous courts of appeals have repeatedly held that the term 'convicted' forecloses individualized inquiry in an alien's specific conduct and does not permit examination of extra-record evidence."); *Gertsenshteyn v. U.S. Dep't of Justice*, 544 F.3d 137, 145 (2d Cir. 2008) ("[T]he INA premises removability not on what an alien has done, or may have done, or is likely to do in the future (tempting as it may be to consider those factors), but on what he or she has been formally *convicted* of in a court of law. . . . One way to ensure proper focus on the conviction, we decided,

---

[12]Moreover, before the Supreme Court decision in *Taylor*, executive branch agencies and the federal courts applied a pre-*Taylor* version of the categorical approach to determine if a non-citizen's prior conviction would have immigration consequences. *See* Alina Das, *The Immigration Penalties of Criminal Convictions: Resurrecting Categorical Analysis in Immigration Law*, 86 N.Y.U. L. Rev. 1669, 1688-1702 (2011).

was the method the Supreme Court applied in *Taylor* and *Shepard*."). The Supreme Court's recent decision in *Nijhawan v. Holder* does not change this analysis. The dissent's citation to *Nijhawan*, Dissent at 9266, provides no support for a more "flexible" modified categorical approach here because the Court in *Nijhawan* specifically placed the statutory definition at issue in Aguilar-Turcios' case, 8 U.S.C. § 1101(a)(43)(I), among those offenses described in "language that must refer to [a] generic crime," thus requiring application of the categorical or modified categorical approaches.[13] *Id.* Furthermore, the Court recognized the narrowness of its *Nijhawan* holding in *Carachuri-Rosendo*. 130 S. Ct. at 2586 n.11 ("Our analysis was tailored to the 'circumstance-specific' language contained *in that particular subsection* of the aggravated felony definition." (emphasis added)).

Third and finally, to the extent that the dissent agrees that the categorical and modified categorical approaches apply in immigration proceedings, and that the *Shepard* limitations on judicially noticeable documents also apply in the immigration context, we fail to see why a supposedly different and "flexible" approach is necessary. *See* Dissent at 9268-69 n.12. If the sum total of the dissent's "flexible" approach is an argument relating to the court's ability to examine only certain portions of the *Shepard* documents in particular types of cases, *see id.*, we address that issue *infra*. We see no need to turn that minor disagreement into an entirely new and less demanding modified categorical approach.

---

[13]The dissent's citation of our final opinion in the long-running case of *Kawashima v. Holder* is equally unhelpful. *See* Dissent at 9266. Our statement in that opinion that "the BIA is not limited to only those documents which a court applying the modified categorical approach may review," addressed only the "circumstance-specific" inquiry mandated by *Nijhawan* into the second requirement of 8 U.S.C. § 1101(a)(43)(M)(i), that "the loss to the victim or victims exceeds $10,000." *Kawashima*, 615 F.3d 1043, 1056 (9th Cir. 2010), *aff'd* 132 S. Ct. 1166 (2012). It was not a general statement, much less a "holding," Dissent at 9266, applicable to all immigration cases.

Thus, we proceed to apply the modified categorical approach as outlined in *Aguila-Montes* to Aguilar-Turcios' case.

## B. Applying the Modified Categorical Approach to Aguilar-Turcios' Article 92 Conviction

Under *Aguila-Montes*, we first examine what facts were "necessary" to support Aguilar-Turcios' Article 92 conviction. Concluding that Aguilar-Turcios' admissions that (1) he used a government computer (2) to obtain access to pornographic Internet sites were the only facts necessary to support his Article 92 conviction, we then analyze whether those facts satisfy the elements of 18 U.S.C. § 2252(a)(2) or (a)(4). We conclude that they satisfy neither.[14]

Aguilar-Turcios pleaded guilty to and was convicted under UCMJ Article 92 of violating DOD Directive 5500.7-R § 2-301(a), which provides that government computers "shall be for official use and authorized purposes only" and that such "authorized purposes" do not include "uses involving pornography."[15] In particular, Aguilar-Turcios was charged as follows:

---

[14]The dissent argues that by failing to consider Aguilar-Turcios' factual admissions in connection with his plea of guilty to the Article 134 charge, we have effectively resurrected the "missing element rule" from *Navarro-Lopez* and undermined the holding in *Aguila-Montes* and the modified categorical approach in general. *See* Dissent at 9259-61. Respectfully, we fail to understand this concern. Only one of Aguilar-Turcios' UCMJ convictions is at issue on appeal. The *Shepard* documents reveal that the government's only "theory of the case" for that conviction was that Aguilar-Turcios used a government computer to obtain access to pornographic Internet sites, charges which Aguilar-Turcios admitted in his plea colloquy. There is no other explicit theory behind the Article 92 conviction, and we decline to invent one. We therefore apply the modified categorical approach as explained by *Aguila-Montes* and restrict our analysis to the limited universe of *Shepard* documents that the approach permits us to consult. It is the dissent's approach that is not sanctioned by either *Aguila-Montes* or *Shepard*.

[15]"The elements of an Article 92, UCMJ, violation for failure to obey a lawful general order or regulation are: (a) a certain lawful general order

> In that Lance Corporal Rigoberto Aguilarturcios
> [sic], U.S. Marine Corps, on active duty, did, . . . on
> divers occasions, from on or about 1 November
> 2007, to on or about 18 July 2002, violate a lawful
> general regulation, to wit: Department of Defense
> Directive 5500.7-R, Section 2-301, Change 2, dated
> 25 March 1996, by *wrongfully using a government
> computer*, Fujitsu MPB3032AT (HD), serial number
> 03065335 (3.24 gb), *to obtain access to porno-
> graphic internet sites*.

(Emphases added.) In order to find an adequate factual basis
that would support Aguilar-Turcios' guilty plea to this charge,
the MJ would only need to determine that Aguilar-Turcios (1)
used a government computer (2) to obtain access to porno-
graphic Internet sites. The MJ could not accept Aguilar-
Turcios' guilty plea and convict him under Article 92 unless
he found that Aguilar-Turcios admitted those two facts; he
was not, however, required to find anything further.

The judicially noticeable documents that we may examine
in applying the modified categorical approach here consist of
(1) the Charge Sheet; (2) the Memorandum of Pretrial Agree-
ment; (3) the Stipulation of Fact, which was incorporated into
the Memorandum of Pretrial Agreement and accepted by the
MJ at the plea proceeding;[16] and (4) the transcript of the plea

_____

or regulation was in effect; (b) the accused had a duty to obey that order
or regulation; and (c) the accused violated or failed to obey the order or
regulation." *United States v. Pope*, 63 M.J. 68, 71-72 (C.A.A.F. 2006).
During the plea colloquy, the MJ informed Aguilar-Turcios that the first
two elements of the offense were (1) that Directive 5500.7-R § 2-301 was
a lawful general regulation that was in effect, and (2) that Aguilar-Turcios
had a duty to obey it. In response, Aguilar-Turcios conceded that these
two preliminary elements were met.

[16]Here, the Stipulation of Fact was explicitly incorporated into the
Memorandum of Pretrial Agreement, and is therefore a judicially notice-
able document for purposes of applying the modified categorical approach
in this case. *See United States v. Almazan-Becerra*, 537 F.3d 1094, 1097-
98 (9th Cir. 2008) (discussing *United States v. Espinoza-Cano*, 456 F.3d
1126, 1128-29, 1132-33 (9th Cir. 2006); *United States v. Hernandez-
Hernandez*, 431 F.3d 1212, 1215, 1218-20 (9th Cir. 2005); *Parilla v. Gon-
zales*, 414 F.3d 1038, 1043-44 (9th Cir. 2005)).

colloquy between the MJ and Aguilar-Turcios.[17]

As noted above, the Charge Sheet simply sets forth the basic facts and elements of the Article 92 charge. The Memorandum of Pretrial Agreement states only that Aguilar-Turcios agreed to plead guilty to the Article 92 charge and to violating DOD Directive 5500.7-R § 2-301, without mentioning any specific acts that he committed to violate it.

The Stipulation of Fact lists separately the facts underlying the Article 92 charge and the Article 134 charge, including the two specifications of the Article 134 charge. Each charge is noted in bold type, and the facts supporting that charge are presented directly below the charge itself. There is no overlap or cross-referencing in the stipulation between the facts supporting the Article 92 charge and those supporting the Article 134 charge. The paragraph in the Stipulation of Fact that supports the Article 92 charge parrots the Charge Sheet, stating that "LCpl Aguilarturcios [sic] used the government computer in his workspace . . . to knowingly and wrongfully obtain access to pornographic internet sites."

The plea colloquy between Aguilar-Turcios and the MJ reveals little more. (In the transcript, Aguilar-Turcios is listed as "ACC" for "accused.") After reading the elements of the Article 92 charge, and the specific charge from the charge sheet, the MJ asked Aguilar-Turcios:

> MJ: Do you understand those elements?

---

[17]The dissent's frequent references to pieces of evidence admitted at the sentencing phase of Aguilar-Turcios' court martial, including photographs and a sworn statement signed by Aguilar-Turcios, are irrelevant to our application of the modified categorical approach, as they are not "included in the 'narrow, specified set of documents that are part of the record of conviction,' " that may be considered as part of the modified categorical approach. *See, e.g.*, *Perez-Mejia*, 663 F.3d at 410 (quoting *S-Yong*, 600 F.3d at 1035-36).

ACC: Yes, sir.

MJ: Are they accurate? When I say "are they accurate," do they describe what you did?

ACC: Yes, sir.

Later in the court martial, the MJ and Aguilar-Turcios engaged in the following exchange:

MJ: And do you believe that downloading pornographic — or visiting, rather, pornographic internet sites violated that regulation?

ACC: Yes, sir.

[. . .]

MJ: And you realize these sites that you were going to were in fact pornographic internet sites?

ACC: Yes, sir.

MJ: Pardon me?

ACC: Yes, sir.

MJ: "Pornography" is defined as writings, pictures, etc., that are intended primarily to arouse sexual desire. Is that what the nature of these sites were?

ACC: Yes, sir.

The MJ discussed each charge and its elements, and asked Aguilar-Turcios about the factual basis for each charge. Again, there was no overlap in the plea colloquy between the charges or the facts underlying them. At the end of the hearing, the MJ found that Aguilar-Turcios' guilty pleas were sup-

ported by an adequate factual basis, but did not make specific factual findings about the conduct underlying each charge.

**[4]** Although the limited information regarding the Article 92 charge in these documents reveals little about what Aguilar-Turcios actually did, it does establish both facts necessary to support his guilty plea to the Article 92 charge. First, Aguilar-Turcios admitted that he used a government computer, and second, he admitted that he obtained access to or visited pornographic Internet sites on that computer, as the MJ defined "pornography." These admissions provided a sufficient factual basis for Aguilar-Turcios' guilty plea and allowed the MJ to convict him of violating Article 92. *See In re Ellis*, 356 F.3d 1198, 1204-05 (9th Cir. 2004) (finding that a guilty plea and a stipulation of fact provided "ample evidence" of guilt); *see also United States v. Rivera-Ramirez*, 715 F.2d 453, 457-58 (9th Cir. 1983) (explaining that, although there was a limited factual record, there was an adequate factual basis for the defendant's guilty plea because nothing in the record placed the accuracy of the plea in doubt).[18] As we discuss more fully *infra*, these factual admissions do not mention child pornography or minors and therefore do not satisfy the generic federal offense under 18 U.S.C. § 2252(a)(2) or (a)(4).

**[5]** The dissent argues that we may look beyond Aguilar-Turcios' Article 92 conviction to his Article 134 conviction in our application of the modified categorical approach.[19] Dis-

---

[18]The standard under the UCMJ requires the MJ to " 'determin[e] whether there is an adequate basis in law and fact to support the plea before accepting it.' " *United States v. Jones*, 69 M.J. 294, 299 (C.A.A.F. 2011) (quoting *United States v. Inabinette*, 66 M.J. 320, 321-22 (C.A.A.F. 2008)). The UCMJ requires that a defendant admit his guilt and articulate the facts that objectively establish his guilt. *Id.* An MJ may consider a stipulation of facts and the accused's responses on the record in making that determination. *Id.*

[19]The charge sheet alleged that Aguilar-Turcios violated Article 134 as follows:

sent at 9261-63. The dissent contends that if we do that, it is clear that Aguilar-Turcios only admitted to accessing child pornography. Dissent at 9255-56. We disagree. First, as we discuss below, our inquiry is limited to the conviction on which the government bases its charge that an alien is removable. Here, that is Aguilar-Turcios' Article 92 conviction. Second, even if we could look to Aguilar-Turcios' Article 134 conviction, none of the factual admissions that related to the Article 134 charge were "necessary" to support his Article 92 conviction. Finally, the different allegations in the Article 92 charge and the Article 134 charge mean that we cannot read the conduct alleged with respect to each charge as co-extensive.

[6] First, there is no legal precedent that allows a court, in its application of the modified categorical approach, to look beyond the record of conviction of the particular offense that the government alleges is an aggravated felony. We agree with the Eleventh Circuit's conclusion that there is "no authority . . . that permits the combining of two offenses to determine whether one or the other is an aggravated felony." *Jaggernauth v. Att'y Gen.*, 432 F.3d 1346, 1355 (11th Cir. 2005). Furthermore, we decline to create such authority here. Aguilar-Turcios' Article 92 and Article 134 convictions were for separate offenses that charged different conduct, and we are reluctant to conflate the two into one or allow one to seep into the other when applying the modified categorical approach.

---

In that Lance Corporal Rigoberto Aguilarturcios [sic], U.S. Marine Corps, on active duty, did, . . . on six (6) occasions, from on or about 1 November 2007, to on or about 18 July 2002, on a government computer hard drive, Fujitsu MPB3032AT (HD), serial number 03065335 (3.24 gb), wrongfully and knowingly possess visual depictions of minors engaging in sexually explicit conduct . . . .

**[7]** The dissent argues that we may consider the factual basis supporting the Article 134 charge to conclude that Aguilar-Turcios was convicted under Article 92 of conduct proscribed by § 2252(a)(2) and/or (a)(4). Dissent at 9261-62. The government argues the same, reasoning that nothing in *Taylor* or *Shepard* prevents the court from looking at the facts underlying Aguilar-Turcios' Article 134 conviction to conclude that his Article 92 conviction is an aggravated felony. We err on the side of caution and hold that under the modified categorical approach, we consider only those sections of the *Shepard* documents that pertain to the specific conviction or convictions that (1) the government charges render the alien removable or ineligible for relief *and* (2) are at issue on appeal. This holding is in line with the "cautio[us]," "circumscribed" analysis required by *Aguila-Montes*, and "ensure[s] that [the modified categorical approach] remains a narrow exception to the categorical approach." *Aguila-Montes*, 655 F.3d at 937, 938.

**[8]** In this case, each of Aguilar-Turcios' convictions had a separate factual basis, as outlined in the Stipulation of Fact. This is not a case where multiple convictions rested on the same set of facts. Our inquiry here is therefore limited to those portions of the *Shepard* documents that pertain to Aguilar-Turcios' Article 92 conviction. *Id.* at 940.

Second, even if we could look at the record as a whole, including the sections pertaining to Aguilar-Turcios' Article 134 conviction, none of the facts supporting his Article 134 conviction were necessary to support his Article 92 conviction. The modified categorical approach limits our inquiry to the "facts the conviction necessarily rested on." *Id.* at 940. We explained above that the only facts on which Aguilar-Turcios' Article 92 conviction "necessarily rested" were (1) his use of a government computer (2) to obtain access to pornographic Internet sites. He admitted to both acts and pleaded guilty to the Article 92 charge at the beginning of his court-martial. The MJ carefully addressed each charge and its elements sep-

arately and in turn, not together. The factual bases for the two convictions were separate and distinct and none of the facts that related to the Article 134 conviction were necessary to support the Article 92 conviction.[20] Therefore, a more expansive review of the *Shepard* documents adds nothing to our analysis under the modified categorical approach.

*Aguila-Montes* also instructs that we apply the following test to determine "the facts necessarily found by the trier of fact in support of the conviction": "If the defendant could not have been convicted of the offense of conviction *unless* the trier of fact found the facts that satisfy the elements of the generic crime, then the factfinder necessarily found the elements of the generic crime." 655 F.3d at 937. Here, to conclude that the MJ "necessarily found the elements" of 18 U.S.C. § 2252(a)(2) or (a)(4) would mean that *unless* the MJ found facts satisfying the elements of § 2252(a)(2) or (a)(4), Aguilar-Turcios could not have been convicted of violating UCMJ Article 92. Such factual findings or admissions were, however, entirely unnecessary to permit the MJ to find an

---

[20]The dissent's conclusion that the MJ "must have found Aguilar-Turcios guilty of an Article 92 violation based on his viewing of child pornography" relies in part on a sworn statement from Aguilar-Turcios that was admitted only at the sentencing phase of his court-martial and which we are not permitted to consult when applying the modified categorical approach. Dissent at 9258. The dissent justifies its references to this non-*Shepard* document by arguing that, under the modified categorical approach, we may consider factual stipulations. Dissent at 9258 n.3. We do not dispute that under the modified categorical approach factual stipulations may be relevant *Shepard* documents, and indeed we consider and discuss the Stipulation of Fact between Aguilar-Turcios and the prosecution. *See supra* at 9237. The Stipulation of Fact, which was mentioned explicitly in the Memorandum of Pretrial Agreement, is distinct from Aguilar-Turcios' sworn statement that he signed during his interrogation by investigating officers. The sworn statement, offered by the prosecutor at the sentencing phase of the court martial, does not qualify on its own as a *Shepard* document, *see Shepard*, 544 U.S. at 16; *Aguila-Montes*, 655 F.3d at 921, and is not mentioned in any of the judicially noticeable documents in this case. *See Almazan-Becerra*, 537 F.3d at 1097-98.

adequate factual basis for Aguilar-Turcios' plea to violating Article 92. Although we discuss the elements of § 2252(a)(2) and (a)(4) more fully *infra*, an example here will help illustrate this point. One of the elements of both § 2252(a)(2) and (a)(4) is that the offense conduct involves a minor. But the Article 92 charge says nothing about minors, and it was not necessary for the MJ to find that minors were involved in order to convict Aguilar-Turcios of using a government computer to obtain access to pornographic internet sites. As we discussed above, the MJ had the authority to accept Aguilar-Turcios' guilty plea on the basis of his admissions to that conduct, without more. Therefore, the involvement of minors, one of the elements of § 2252(a)(2) and (a)(4) and a fact supporting Aguilar-Turcios' Article 134 conviction, was not a "fact[ ] necessarily found by the trier of fact in support of the [Article 92] conviction." *Id.*

Finally, the different allegations in the Article 92 charge and the Article 134 charge mean that we cannot construe the charged conduct as co-extensive, as the dissent and the government seem to assume.[21] There is no logical reason why Aguilar-Turcios' admission to accessing pornographic Internet sites under the Article 92 charge would serve to limit the scope of his Internet use during the period at issue to the six instances of downloading images of child pornography charged under Article 134. Both charges reference the same computer serial number and the same date range. But those similarities alone do not lead inevitably to the conclusion that

---

[21]The government argues that "[t]he conclusion is thus unavoidable that Aguilar's admission to viewing 'pornographic internet sites' [in the Article 92 charge] on the same computer, on the same dates [as in the Article 134 charge], refers to the child pornography." The dissent makes a similar argument: "Aguilar-Turcios' admission to viewing 'pornographic internet sites' on the same computer, on the same dates [as in the Article 134 charge], undoubtedly refers to the child pornography." Dissent at 9257-58. Although the Article 134 charge is irrelevant here, as the government did not appeal the IJ's adverse ruling on that conviction, we address this argument because the dissent and government stress it to such a degree.

Aguilar-Turcios only used that particular computer six times over the course of the eight-and-a-half-month period alleged, and only to download images of child pornography. Indeed, the allegations in the charges make that conclusion unlikely: the Article 92 charge alleges that Aguilar-Turcios "obtain[ed] access to pornographic internet sites" "on divers occasions," while the Article 134 charge alleges more specifically that Aguilar-Turcios possessed child pornography images "on six (6) occasions."**22** Because the two charges are worded differently, we cannot conclude that the two convictions necessarily rested on the same facts.

**[9]** Having established, on the basis of judicially noticeable documents, that Aguilar-Turcios' Article 92 conviction "necessarily rested" only on the facts that (1) he used a government computer (2) to obtain access to pornographic Internet sites, the modified categorical approach directs us to determine "whether these facts satisfy the elements of the generic offense." *Aguila-Montes*, 655 F.3d at 940.

**[10]** The generic federal offenses at issue here are 18 U.S.C. § 2252(a)(2) and (a)(4). Both qualify as "aggravated felonies" under 8 U.S.C. § 1101(a)(43)(I). Section 2252(a)(2) criminalizes "knowingly receiv[ing], or distribut[ing], any visual depiction . . . , or knowingly reproduc[ing] any visual depiction for distribution . . . , if — (A) the producing of such

---

**22**The dissent is correct that "divers" *could* refer to six, but it could also refer to any other number greater than one. Dissent at 9261 n.6. " 'When members find an accused guilty of an "on divers occasions" specification, they need only determine that the accused committed two acts that satisfied the elements of the crime as charged—without specifying the acts, or how many acts, upon which the conviction was based.' " *United States v. Jones*, 66 M.J. 704, 708 (A.F. Ct. Crim. App. 2008) (quoting *United States v. Rodriguez*, 66 M.J. 201, 203 (C.A.A.F. 2008)). And while "[s]ix occasions would easily fall within th[e] definition [of 'divers']," so would two occasions, or twenty, or one hundred. Dissent at 9261 n.6. We cannot know the number of occasions to which the government was referring when it used the term "on divers occasions," but we easily conclude that we cannot read "divers" as necessarily referring to "six."

visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct." The version of § 2252(a)(4) that was in effect until 2008 similarly criminalized "knowingly possess[ing] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . , if — (i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct."

Under the modified categorical approach as explained by *Aguila-Montes*, in order for Aguilar-Turcios to have been "convicted of" one of these generic federal aggravated felonies, his Article 92 conviction must necessarily have rested on facts that satisfy the following elements: (1) knowingly receiving, distributing, reproducing for distribution, or possessing visual depictions of (2) a minor (3) engaging in sexually explicit conduct. A comparison of the necessary facts of Aguilar-Turcios' Article 92 conviction and the elements of these two federal offenses illustrates that the facts do not satisfy the elements.

**[11]** (1) *Receiving, distributing, reproducing, possessing visual depictions*: Aguilar-Turcios' Article 92 conviction, including the Stipulation of Fact, shows only that he "obtain[ed] access to" pornographic Internet sites. The MJ clearly described the conduct charged under Article 92 as "visiting" or "going to . . . pornographic internet sites." The act of accessing, visiting, or going to an Internet site is not the equivalent of possessing or receiving a visual depiction.[23] In

---

[23]It is possible to "possess" a visual depiction by visiting an Internet site if the image from the site is saved in a cache file and there is some evidence that the defendant has "knowledge of and access to the files." *United States v. Flyer*, 633 F.3d 911, 919 (9th Cir. 2011). Nothing in the *Shepard* documents in this case establishes that Aguilar-Turcios had knowledge of and access to whatever images were saved in the cache file on the computer that he used. *See United States v. Kuchinski*, 469 F.3d

fact, § 2252(a)(4) was amended in 2008 to criminalize additionally the action of someone who "knowingly accesses with intent to view" child pornography, underscoring that possession is distinct from both accessing and viewing.[24] Additionally, there is no suggestion that Aguilar-Turcios distributed or reproduced any visual depictions. Therefore, Aguilar-Turcios' conviction for obtaining access to pornographic Internet sites does not equate to any of the acts specified in § 2252(a)(2) or (a)(4).

Moreover, a pornographic Internet site, as the MJ defined pornography, does not necessarily contain any visual depictions. The MJ described pornography as "writings, pictures, etc., that are intended primarily to arouse sexual desire," a very broad definition. There is nothing in the MJ's definition of pornography that would limit Aguilar-Turcios' admission to the accessing of images or pictures only.

**[12]** (2) *Minor*: The facts necessary to Aguilar-Turcios' Article 92 conviction do not mention minors.

**[13]** (3) *Engaging in sexually explicit conduct*: Again, the facts necessary to Aguilar-Turcios' Article 92 conviction do not mention this phrase or even incorporate the concept. Aguilar-Turcios pleaded guilty and admitted to accessing por-

---

853, 863 (9th Cir. 2006) ("Where a defendant lacks knowledge about the cache files, and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images. To do so turns abysmal ignorance into knowledge and a less than valetudinarian grasp into dominion and control."). The dissent argues that Aguilar-Turcios "possessed" visual depictions by downloading images from the Internet to his computer, but only refers to factual stipulations relating to the Article 134 charge, which are irrelevant here.

**[24]***See* Enhancing the Effective Prosecution of Child Pornography Act of 2007, Pub. L. No. 110-358, § 203, 122 Stat. 4001.

nographic Internet sites on his government computer, as the MJ defined pornography at his court martial. That is all that he admitted to for the purposes of Article 92, and those are the only facts necessary to support his conviction.

Even if Aguilar-Turcios' Article 92 conviction was somehow understood to encompass the phrase "engaging in sexually explicit conduct," we could not hold that Aguilar-Turcios' admission under Article 134 of possessing images of minors engaged in such conduct satisfies this element of § 2252(a)(2) and (a)(4) because the definition of "sexually explicit conduct" offered by the MJ does not correspond to the federal definition. The MJ defined "sexually explicit conduct" during the plea colloquy with Aguilar-Turcios as "conduct that is plainly or clearly involving sexually [sic] activity; the organs of sex; or the instincts, drives, or behavior associated with sexual activity." For the purposes of § 2252(a)(2) and (a)(4), however, federal law defines "sexually explicit conduct" as "actual or simulated — (i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A); *see also United States v. Adams*, 343 F.3d 1024, 1034 (9th Cir. 2003).

Aguilar-Turcios' guilty plea to the Article 134 charge of possessing images of minors involved in sexually explicit conduct, as the MJ defined the term, could therefore have referred only to images of minors involved in conduct plainly or clearly involving the instincts or drives associated with sexual activity. That would not satisfy the "sexually explicit conduct" element of § 2252(a)(2) or (a)(4) as that term is defined by federal law, because an image might depict minors engaging in conduct involving the instincts or drives associated with sexual activity without depicting actual or simulated sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or a lascivious exhibition of their genitals or

pubic areas—for example, an image of minors kissing would satisfy the MJ's definition, while falling far short of the federal definition.[25] Aguilar-Turcios' conviction under Article 134 did not necessarily rest on facts satisfying the federal definition of "sexually explicit conduct."

Aguilar-Turcios' Article 92 conviction does not necessarily rest on facts satisfying the elements of either § 2252(a)(2) or (a)(4). It is possible that his separate conviction under Article 134 would satisfy those elements—although doubtful, given the differing definitions of "sexually explicit conduct"—but the government did not appeal the IJ's ruling that Article 134 could not serve as a basis for removal. The government must accept the consequences of its litigation strategies, as must any defendant.

**[14]** In conclusion, Aguilar-Turcios' Article 92 conviction was not an aggravated felony under the modified categorical approach and he is therefore not removable.

## IV.

Because we conclude that Aguilar-Turcios' UCMJ Article 92 conviction is not an aggravated felony, we have jurisdiction over this case, and we grant the petition for review and remand to the BIA with instructions for the agency to vacate the removal order against the petitioner.

**GRANTED and REMANDED.**

---

[25]The dissent objects to our reasoning, Dissent at 9263-66, but again relies on evidence from the administrative record that is not with the limited universe of *Shepard* documents that we are permitted to consult when applying the modified categorical approach.

BYBEE, Circuit Judge, dissenting:

Judge Frankel once wrote that "[a]s people, we know or powerfully suspect a good deal more than we are prepared as lawyers to admit." Marvin E. Frankel, *The Search for Truth: An Umpireal View*, 123 U. Pa. L. Rev. 1031, 1039 (1975). This case demonstrates the principle perfectly. Everyone knows what Lance Corporal Aguilar-Turcios was looking at on his computer, but the lawyers—at least the majority—cannot bring themselves to admit it. Even when it is plain on the record before us.

The majority concludes that we cannot tell whether Aguilar-Turcios knowingly received or possessed visual depictions of a minor engaging in sexually explicit conduct, Maj. Op. at 9245, because:

• "[t]he act of accessing, visiting, or going to an Internet site is not the equivalent of possessing or receiving a visual depiction," *id.* at 9245;

• "a pornographic Internet site . . . does not necessarily contain any visual depictions," *id.* at 9246;

• "Aguilar-Turcios' Article 92 conviction do[es] not mention minors," *id.*; and

• "Aguilar-Turcios' guilty plea to the Article 134 charge of possessing images of minors involved in sexually explicit conduct" might be based on "an image of minors kissing," *id.* at 9247-48.

This is fatuous. The idea that viewing pornography and downloading pornographic images does not involve possessing or receiving a visual depiction, that a pornographic website does not contain visual depictions, that Aguilar-Turcios was not viewing child pornography, or that any sexually explicit con-

duct Aguilar-Turcios was viewing might just have involved minors kissing is contrary to all that we know.

We know—or, in Frankel's words at least "powerfully suspect"—that the Marine Corps does not sentence its Marines to ten months of confinement, a pay-grade reduction, and a bad-conduct discharge for viewing pictures of minors kissing. But we need not speculate because, with military precision, the Special Court Martial laid out exactly what Aguilar-Turcios was doing. As Lance Corporal Aguilar-Turcios forthrightly admitted in his plea colloquy, he knew that the "individuals [were] engaged in sexually explicit conduct, that "they were minor children," that it was his "purpose to download and view those photographs," that he was "actually in possession of those images," and that he "realize[d] it was wrong at the time [he] did it." Lest there be any lingering doubt as to what Aguilar-Turcios was admitting to, the BIA's administrative record has three of the pictures he downloaded and that were introduced at his court martial. They do not depict minors kissing.

This exercise is contrary to all reason. I respectfully, but emphatically, dissent.

## I

Under 8 U.S.C. § 1227, an alien is removable for committing an "aggravated felony" after entry into the United States. *See* 8 U.S.C. § 1227(a)(2)(A)(iii). An "aggravated felony" includes, among other things, offenses described in 18 U.S.C. § 2252, *see* 8 U.S.C. § 1101(a)(43)(I) (listing crimes relating to child pornography, including those described in 18 U.S.C. § 2252, as part of the definition of "aggravated felony"), two provisions of which are relevant here. First, it is an aggravated felony to "knowingly receive[ ] . . . any visual depiction that has been . . . transported in interstate or foreign commerce . . . by any means including by computer . . . if (A) the producing of such visual depiction involves the use of a minor engaging

in sexually explicit conduct; and (B) such visual depiction is of such conduct." 18 U.S.C. § 2252(a)(2) (2003). Second, § 2252(a)(4), as it existed at the time of Aguilar-Turcios' conviction, criminalized the "knowing[ ] possess[ion of] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . , if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct." *Id.* § 2252(a)(4)(B). In my view, both of these provisions can form the basis for Aguilar-Turcios' removal.

## A

I agree with the majority that we cannot find that Aguilar-Turcios committed an aggravated felony as a categorical matter unless, after comparing the elements of the statute of conviction and the definition of the aggravated felony, we conclude that the entire range of conduct prohibited by the statute fits within the statutory definition of an aggravated felony. *Taylor v. United States*, 495 U.S. 575, 600-02 (1990).

There is no question that Aguilar-Turcios' conviction would not constitute a removable offense under this inquiry. Aguilar-Turcios pled guilty to violations of two broad provisions of the UCMJ: one violation of Article 92 for violating a lawful general order, *see* 10 U.S.C. § 892, and one violation of Article 134 for conduct unbecoming a Marine, *see* 10 U.S.C. § 934.

Article 92 makes any member of the military who "violates or fails to obey any lawful general order or regulation" punishable by a court martial. 10 U.S.C. § 892(1). Aguilar-Turcios pled guilty to violating § 2-301(a)(2)(d) of Department of Defense Directive 5500.7-R, which prohibits "put[t-ing] federal government communications systems to uses that would reflect adversely on DoD or the DoD component (such as uses involving pornography; chain letters; unofficial adver-

tising, . . . and other uses that are incompatible with public service)."[1]

The broad language of § 2-301(a)(2)(d) clearly encompasses conduct unrelated to possession of child pornography as defined in 18 U.S.C. § 2252(a)(2) or 2252(a)(4); thus, a violation of § 2-301(a)(2)(d) is not categorically an aggravated felony.

## B

The *Taylor* Court recognized that there would be situations

---

[1]The majority "assume[s] without deciding that . . . the elements of a lawful general order like that at issue in this case" may be considered in determining whether Aguilar-Turcios' Article 92 conviction is a categorical aggravated felony. Maj. Op. at 9229 n.9. I have no hesitation concluding that we may look to the elements of the lawful general order when applying the categorical and modified categorical analysis. The purpose of the UCMJ is to reconcile the need for a command structure in the military with the need for criminal law safeguards in administering military justice. *See* John S. Cooke, *Introduction: Fiftieth Anniversary of the Uniform Code of Military Justice Symposium Edition*, 165 Mil. L. Rev. 1, 7-10 (2000). For that reason, the UCMJ shares many characteristics of the civilian criminal law system, and provides important procedural rights such as the right against self-incrimination and the right to assistance of counsel. *Id.* at 9-10. The UCMJ is thus properly viewed as a parallel system of law enforcement, akin to a state criminal system.

The categorical and modified categorical analysis was designed to calibrate the disparate criminal laws in our federal system to the national criminal and immigration laws. Had Aguilar-Turcios pled guilty to a violation of California's child pornography statute, Cal. Penal Code § 311.11, the panel would have no reservations applying the categorical and modified categorical analysis to determine if § 311.11 was an aggravated felony. I see no principled difference between looking at the elements of the lawful general order underlying Aguilar-Turcios' convictions and looking at the elements of a state criminal statute. To conclude otherwise would be to render the immigration removal laws inapplicable to any alien subject to the UCMJ who is prosecuted for violating an order that would have been prosecuted as a removable crime had it occurred off the military base.

where "the sentencing court [may look] beyond the mere fact of conviction in a narrow range of cases where a jury was actually required to find all the elements of [the generic crime]." *Taylor*, 495 U.S. at 602. The Supreme Court has extended that approach to cases, such as this, where the alien has pled guilty to the predicate crime. *See Shepard v. United States*, 544 U.S. 13, 20 (2005). The substantial (and at times confusing) body of law that has developed to define this "narrow range of cases" where a court can look "beyond the mere fact of conviction" has come to be known as the modified categorical approach. *Taylor*, 495 U.S. at 602; *see United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc).

When the modified categorical analysis applies, we consult charging documents, signed plea agreements, jury instructions, guilty pleas, transcripts of plea proceedings, and judgment, and "comparable judicial record[s] of this information," *Shepard*, 544 U.S. at 26, to determine if the conduct for which the alien was actually convicted satisfies the definition of an aggravated felony. *Aguila-Montes*, 655 F.3d at 922*; see also Shepard*, 544 U.S. at 20-21. Thus, in the present case I would examine these documents to determine "whether a plea of guilty to [the Article 92 conviction] necessarily admitted [the] elements of the [aggravated felony]." *Shepard*, 544 U.S. at 26. In other words, we should ask the following question: "in the course of finding that the defendant violated the statute of conviction, was the factfinder *actually required to find the facts satisfying* the elements of the generic offense?" *Aguila-Montes*, 655 F.3d at 936. "[I]n the plea context," "the modified categorical approach asks what facts the conviction 'necessarily rested' on in light of the theory of the case . . . ." *Id.* at 936-37.

The phrases "actually required" and "necessarily rested" may be subject to varying interpretations, but we have already elaborated on these concepts in our en banc decision in *Aguila-Montes*. In that decision, we said:

> Aguila's argument interprets the concepts of "actually required" and "necessarily rested" in *Taylor* and *Shepard* in a strictly elemental sense—that is, a prosecutor must be "actually required to prove the generic elements in every case brought under the state statute so that a jury's finding must have "necessarily rested" on that element in every trial brought under the provision. . . . As a consequence, according to Aguila . . . the modified categorical approach can never demonstrate that the factfinder was "actually required," as a formal matter, to find a non-element fact. . . . In other words, Aguila's reading of "actually required" collapses the modified categorical approach into the *categorical* approach, because the only time that the factfinder in the state case is "actually required" to find a particular generic element in that way is when conviction under the state statute *always* satisfies the generic statutory definition regardless of the particular facts of the case . . . . Thus, in order to preserve any role for the modified categorical approach, "actually required" cannot mean "actually required by specific words in the statute of conviction."

*Id.* at 936. Rejecting the "strictly elemental" interpretation of these phrases, we "acknowledge[d] that 'actually required' means something like 'actually required *in light of the facts the defendant admitted*' or 'actually required in light of the facts referred to in jury instructions' . . . ." *Id.* at 937 (emphasis added). This analysis should guide us here.

## II

The majority agrees that the modified categorical approach is applicable, but concludes that under the modified categorical approach, "Aguilar-Turcios' Article 92 conviction is not an aggravated felony because the facts on which his conviction 'necessarily rested' do not satisfy the elements of either

18 U.S.C. §§ 2252(a)(2) or (a)(4)." Maj. Op. at 9228. But because the *Shepard* documents—here, the Record of Trial by Special Court Martial, at which Aguilar-Turcios pled guilty to the charges—leave no doubt that Aguilar-Turcios' conviction necessarily rested on his admission that he accessed child pornography within the meaning of 18 U.S.C. § 2252(a), I cannot agree.

A

We should have no difficulty finding that Aguilar-Turcios' conviction for violating Article 92 necessarily shows that he committed the aggravated felony of knowing possession of child pornography. This is so for one unavoidable reason: The only pornography that Aguilar-Turcios admitted to accessing on his government computer during the plea colloquy was images of child pornography.

The charging document in this case leaves no room for doubt about what activities led to Aguilar-Turcios' conviction for violating Article 92. The dates of the offenses and the serial number of the computer charged under Article 92 are identical to the dates and serial number charged under Article 134, which specifically and exclusively charges knowing possession of child pornography. These are violations of two military rules for the same core conduct. Aguilar-Turcios pled guilty to both charges contemporaneously in a single plea proceeding.

With regards to the violation of Article 92, the charging document alleged:

> In that Lance Corporal Rigoberto Aguilarturcios, U.S. Marine Corps, on active duty, did, at or near Building 7134, Station Armory, Marine Tactical Air Command Squadron 38, Marine Air Control Group 38, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, California, on divers occa-

sions, *from on or about 1 November 2001, to on or about 18 July 2002*, violate a lawful general regulation, to wit: Department of Defense Directive 5500.7-R, Section 2-301 . . . , by wrongfully using a government computer, *Fujitsu MPB3032AT (HD), serial number 03065335 (3.24 gb)*, to obtain access to pornographic internet sites.

(emphasis added).

Similarly, the charge for the violation of Article 134 states:

In that Lance Corporal Rigoberto Aguilarturcios, U.S. Marine Corps, on active duty, did, at or near Building 7134, Station Armory, Marine Tactical Air Command Squadron 38, Marine Air Control Group 38, 3d Marine Aircraft Wing, Marine Corps Air Station Miramar, San Diego, California, on six (6) occasions, *from on or about 1 November 2001, to on or about 18 July 2002*, on a government computer hard drive, *Fujitsu MPB3032AT (HD), serial number 03065335 (3.24 gb)*, wrongfully and knowingly possess visual depictions of minors engaging in sexually explicit conduct . . . .

(emphasis added).

Aguilar-Turcios pled guilty as charged to both of these charges in the same plea proceeding, and, significantly, both charges give the same computer hard drive serial number and the same dates. It is true that the Article 92 charge only referred to "pornography," but that is because the charge was failing to obey a lawful order, and the order was DoD Directive 5500.7-R, which prohibited inappropriate uses of government communications systems, including "uses involving pornography."[2] For that reason I join the majority in conclud-

---

[2]Aguilar-Turcios' plea colloquy confirms that the focus was whether he had "any permission or authority to go to these sites."

ing that his Article 92 conviction is not categorically an aggravated felony. The category of "pornography" is a divisible category, much as is the category of "weapons" we discussed at length in *Aguila-Montes*, 655 F.3d at 926-38. As a divisible category, it is appropriate for us to look at the *Shepard* documents to see if the pornography Aguilar-Turcios viewed included child pornography. *Id*. at 936-37 (even if the statute of conviction only required proof that the defendant used a "weapon," "if the only weapon the defendant admitted to using was a gun, then we can be confident that the trier of fact was 'required' to find that the defendant used a gun").

In this case, read as a whole, the charging document, the plea colloquy, and the exhibits admitted without objection leave no doubt that Aguilar-Turcios pled guilty to "wrongfully and knowingly possess[ing] visual depictions of minors engaging in sexually explicit conduct." In connection with the Article 134 charge, he admitted to the charge that he "possessed six (6) visual depictions of minors engaging in sexually explicit conduct," which he found at "pornographic internet sites." During the plea colloquy, the military judge asked him whether he was viewing "individuals engaged in sexually explicit conduct," whether "the people depicted in these photographs were minors," and whether he was "actually in possession of those images." During the sentencing portion of the hearing, Aguilar-Turcios' own counsel confirmed with him that he had gone to "child porn sites" and that he knew it was wrong. The Stipulation of Fact, introduced as an exhibit and relied on by the court martial during the plea colloquy, provided further detail. Aguilar-Turcios admitted, in connection with the Article 92 violation, that he accessed "pornographic internet sites" on the computer in his workspace. In a signed, written statement, also admitted at his plea hearing, Aguilar-Turcios confessed that he was searching on his government computer using terms "like 'preteen,' 'nude teens' or 'young nude' or 'Lolita'" from which he "would get a list of websites with teen or preteen girls." Aguilar-Turcios' admission to viewing "pornographic internet

sites" on the same computer, on the same dates, undoubtedly refers to the child pornography.

Based on these documents, the military judge must have found Aguilar-Turcios guilty of an Article 92 violation based on his viewing of child pornography, as those images are the only ones specifically mentioned in the factual record presented during the plea colloquy and supported in the stipulations of fact and statements upon which the conviction relied.[3]

---

[3]The majority claims that we cannot consider certain admissions made by Aguilar-Turcios because they are contained in a sworn statement that was admitted "only at the sentencing phase of his court-martial" rather than, I assume, during the plea phase. Maj. Op. at 9242 n.20. But the plea and sentencing occurred on the same day before the same military judge and are contained in the same transcript. Nothing the Supreme Court has said and nothing we have said in other cases instructs us to stop reading the transcript of the judicial body accepting the plea when we believe that the defendant has finished confirming the facts upon which his plea is based, even if additional stipulated facts are contained elsewhere in the same transcript. Quite the opposite, *Shepard* specifically identifies "the defendant's own admissions or accepted findings of fact confirming the factual basis for a valid plea" as reliable bases for determining the facts upon which the conviction necessarily rested. *Shepard*, 544 U.S. at 25.

Our own case law post-*Shepard* confirms that stipulations of fact forming the basis of a defendant's plea may be considered under the modified categorical approach. For example, in *Parrilla v. Gonzales*, 414 F.3d 1038 (9th Cir. 2005), the petitioner agreed that a Certification for Determination of Probable Cause ("CDPC"), which described the factual basis for his criminal prosecution, could be referenced to "determin[e] if there is a factual basis for [his] plea and for sentencing." *Id.* at 1044. We concluded that because the petitioner "explicitly incorporat[ed] the CDPC into his guilty plea" by stating that he understood that the court would review the Certification in determining whether there was a factual basis for his plea, we could consider it as part of the modified categorical analysis. *Id.*

Our situation is no different. Here, prior to sentencing, Aguilar-Turcios entered into a Stipulation of Fact that describes the factual basis for his plea. The Stipulation makes clear that it can be used for, among other things, "determin[ing] whether the accused is guilty of the charged offenses" and "reviewing the case for factual sufficiency." Just as in *Parrilla*, Aguilar-Turcios's Stipulation of Fact is "an explicit statement 'in which the factual basis for the plea was confirmed by the defendant,' " and therefore a cognizable *Shepard* document. 414 F.3d at 1044 (quoting *Shepard*, 544 U.S. at 26).

As such, a finding that Aguilar-Turcios accessed child pornography—as opposed to just pornography—was "necessary" to Aguilar-Turcios' conviction and he "could not have been convicted of the offense of conviction" without such a finding. *Aguila-Montes*, 655 F.3d at 937. A fact that is "necessary" to a conviction must be one that the defendant "has the incentive to contest . . . even if that fact is not separately listed as a statutory element of the crime." *Id*. at 938. Here, Aguilar-Turcios had the incentive to contest the accusation that he accessed child pornography because that charge had been levied against him in the Article 134 charge. Having elected to admit to the charge, he cannot now claim that consideration of that admission is unfair.

The majority nonetheless contends that the only "facts" on which Aguilar-Turcios' conviction "necessarily rested" are (1) his use of a government computer, and (2) using the computer to access pornographic internet sites. Maj. Op. at 9244. Because Aguilar-Turcios' admission to those facts "provided a sufficient factual basis" for his guilty plea, the majority reasons, any facts found beyond those necessary to satisfying those elements are superfluous and therefore beyond the bounds of the modified categorical analysis. *Id.* at 9239. But this is exactly the "strictly elemental" approach to interpreting "necessarily rested" and "actually required" that we rejected in *Aguila-Montes*. The modified categorical approach should not be collapsed into the categorical approach in this manner. We must consider which facts Aguilar-Turcios' conviction "necessarily rested" on "*in light of the facts the defendant admitted*," without stripping down the admitted facts to only their components that align with the elements of the crime of conviction. *Aguila-Montes*, 655 F.3d at 937 (emphasis added).

The majority has undermined *Aguila-Montes*. *Aguila-Montes* explicitly overruled the "missing element" rule set forth in *Navarro-Lopez v. Gonzalez*, 503 F.3d 1063, 1073 (9th Cir. 2007), which precluded the use of the modified categorical approach in situations where the crime of conviction is

missing an element of the generic crime. 655 F.3d at 940. Under the majority's approach, in a missing element case, we will never find the factual basis for the missing element because the only facts on which the conviction will be deemed to have "necessarily rested" are the facts that mirror the exact elements of the generic crime. Further, as we said in *Aguila-Montes*, "[t]he problem with [the 'strictly elemental' version of the modified categorical approach] is that if we follow its logic, the modified categorical approach should not apply to *divisible* statutes, leaving no room for a modified approach at all. Even in a divisible statute situation, the fact-finder is never 'actually required' by statute alone to find the *precise elements* of the generic crime." *Id.* at 935. Before *Aguila-Montes*, we were in agreement that at least divisible statutes were subject to an effective version of the modified categorical approach. After *Aguila-Montes*, we were in agreement that even so-called "missing element" statutes were similarly covered. The majority's approach, which is the same "strictly elemental" approach we rejected in *Aguila-Montes*, not only renders our overruling of *Navarro-Lopez* in *Aguila-Montes* ineffectual but also undermines the effectiveness of the modified categorical approach generally.[4]

The majority's approach is the equivalent of willful blindness to the facts Aguilar-Turicos admitted. The "only theory

---

[4]According to the majority, "[t]he dissent argues that by failing to consider Aguilar-Turcios' factual admissions in connection with his plea of guilty to the Article 134 charge, we have effectively resurrected the 'missing element rule' from *Navarro-Lopez* and undermined the holding in *Aguila-Montes* and the modified categorical approach in general." Maj. Op. at 9235 n.14. But my argument here relates to the majority's approach, not specifically to its failure to consider the factual admissions made in connection with the Article 134 charge, and the majority's approach would be problematic even in a case with no second charge involved. The modified categorical approach cannot limit the facts to be considered to merely the components of the admitted facts that align with the elements of the crime of conviction if it is to serve any purpose, yet that is exactly how the majority construes the modified categorical approach in its opinion.

the government put forward" revolved around his accessing child pornography on his government computer. *Cf. Aguila-Montes*, 655 F.3d at 938. The majority simply stops reading the plea colloquy at a point convenient to its theory.

The majority can point to nothing in the record where Aguilar-Turcios admitted to viewing anything except child pornography. And even if there were such evidence, it would be irrelevant. If Aguilar-Turcios admitted to viewing both adult pornography and child pornography, he has admitted to viewing child pornography, and he has committed an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) for which he may be removed. Arguing that Aguilar-Turcios also might have been viewing adult pornography does not help his case.[5]

Because the charging document, the plea colloquy, and the Stipulation of Fact all demonstrate that the pornography Aguilar-Turcios admitted to possessing was child pornography, the BIA was well within its rights to conclude that his conviction "necessarily rested" not only on accessing pornography, but accessing child pornography. *Aguila-Montes*, 655 F.3d at 940.

B

The majority takes issue with the idea that Aguilar-Turcios' admission to possession of child pornography as it relates to the Article 134 charge would somehow color his admission to accessing pornographic websites as it relates to the Article 92 charge. Maj. Op. at 9239-44.[6] That Aguilar-Turcios explicitly

---

[5]In fact, in one of his written statements introduced at his plea hearing, Aguilar-Turcios discusses accessing adult porn sites. That fact was minimized as the military judge, the prosecutor, and defense counsel all focused on his viewing of child pornography.

[6]The majority reasons that because Aguilar-Turcios admitted to only six instances of downloading child pornography, and also to accessing pornographic websites on "divers" occasions, it is "unlikely" that the separate charges address the same conduct. Maj. Op. at 9243-44. This is a curious conclusion. The military judge informed Aguilar-Turcios that "divers" means "on multiple occasions or more than one occasion." Six occasions would easily fall within that definition.

admitted to viewing the child pornography in connection with
the Article 134 charge, and not the Article 92 charge, gives
me only brief pause. As the majority appears to concede,
nothing in *Taylor* or *Shepard* limits our modified categorical
review to that portion of the charging document or plea collo-
quy that pertains to the specific charge at issue.[7] Maj. Op. at
9240. Instead, we are permitted to consult these documents to
determine if the alien was convicted of a removable crime.
The only factual basis on which the military judge *could* have
found Aguilar-Turcios guilty of an Article 92 violation was
his viewing of the six child pornography images admitted to
in the plea colloquy, as those images are the only ones men-
tioned in the record at the time the military judge accepted the
plea.

The majority, however, contends that "there is no legal pre-
cedent that allows a court . . . to look beyond the record of
conviction of the particular offense that the government
alleges is an aggravated felony." Maj. Op. at 9240. For sup-
port, the majority relies on *Jaggernauth v. U.S. Attorney Gen-
eral*, 432 F.3d 1346, 1355 (11th Cir. 2005), which suggests
(but by no means holds) that " 'no authority . . . permits the
combining of two offenses to determine whether one or the
other is an aggravated felony.' " Maj. Op. at 9240 (quoting
*Jaggernauth*, 432 F.3d at 1355). But looking to the Article
134 charge in connection with the Article 92 offense is not
"combining" the two offenses to create an aggravated felony
where one may not have existed. Instead, doing so merely

---

[7]The crux of the majority's reasoning is that because the Article 92 and
Article 134 charges do not "overlap" in either the Stipulation of Fact, Maj.
Op. at 9237, or the plea colloquy, *id.* at 9237-38, we too must treat them
as separate. To the extent that the majority means that the Stipulation and
the military judge addressed the Article 92 charge first and the Article 134
charge second, I do not disagree. But to say that the charges do not overlap
or that "[t]his is not a case where multiple convictions rested on the same
set of facts," *id.* at 9241, is preposterous. The Article 92 and 134 charges
do overlap in that they identify the same computer hard drive serial num-
ber and the same dates in the same charging document.

informs the factual circumstances giving rise to the Article 92 charge. *Jaggernauth* has no bearing on this case.[8]

C

The remainder of the majority's contentions are also unpersuasive. First, the majority contends that Aguilar-Turcios did not admit to *possessing* or *receiving* pornography in connection with the Article 92 charge; he only admitted to *accessing* pornography.[9] Maj. Op. at 9245-46. This is important, the majority reasons, because "the act of accessing . . . an Internet site is not the equivalent of possessing or receiving" child pornography, and Aguilar-Turcios only admitted to accessing pornographic websites in connection with his Article 92 conviction. Maj. Op. at 9245-46.

The majority might have a valid point here if Aguilar-Turcios had only admitted to visiting pornographic websites. While we held in *United States v. Romm*, 455 F.3d 990 (9th

[8]The majority actually adopts a rule different from, and much broader than, that suggested in *Jaggernauth.* Exercising what it calls "caution," the majority "decline[s] to create . . . authority" permitting courts to consider admitted facts contained elsewhere in the record other than that portion of the charging document or plea colloquy that pertains to the specific charge at issue. Maj. Op. at 9241. Despite this "caution," the majority has no qualms with precluding *any* court from *ever* doing so where facts are contained in sections of *Shepard* documents not "at issue on appeal," no matter how relevant, or reliable, those facts may be. Maj. Op. at 9241.

[9]The relevant statutes in this case require the defendant to either "knowingly receive[ ] . . . any visual depiction that has been . . . transported in interstate or foreign commerce . . . by any means including by computer . . . if (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (B) such visual depiction is of such conduct," 18 U.S.C. § 2252(a)(2) (2003), or "knowingly possess[ ] 1 or more books, magazines, periodicals, films, video tapes, or other matter which contain any visual depiction . . . , if—(i) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and (ii) such visual depiction is of such conduct," id. § 2252(a)(4)(B).

Cir. 2006), that "[i]n the electronic context, a person can receive and possess child pornography without downloading it, if he or she seeks it out and exercises dominion and control over it," *id.* at 998; *accord United States v. Tucker*, 305 F.3d 1193, 1204 (10th Cir. 2002), we limited the scope of *Romm* in *United States v. Kuchinski*, 469 F.3d 853 (9th Cir. 2006), holding that "[w]here a defendant lacks knowledge about the cache files [where images are automatically saved when pornographic websites are visited], and concomitantly lacks access to and control over those files, it is not proper to charge him with possession and control of the child pornography images located in those files, without some other indication of dominion and control over the images," *id.* at 863. It is true that "[n]othing in the *Shepard* documents in this case establishes that Aguilar-Turcios had knowledge of and access to whatever images were saved in the cache file on the computer that he used." Maj. Op. at 9245-46 n.23. But Aguilar-Turcios also admitted, albeit in the Article 134 context, to downloading child pornography images and stipulated that he viewed and "*possessed* six (6) visual depictions of minors engaging in sexually explicit conduct." (Emphasis added.). Even if accessing pornographic websites does not constitute possessing or receiving pornography, there can be no question that Aguilar-Turcios possessed and received child pornography when he downloaded child pornography images.

I am equally unpersuaded by the majority's discussion of the sexual content Aguilar-Turcios admitted to possessing. First, the majority contends that the military judge defined pornography to not only encompass visual depictions, but also "writings . . . intended primarily to arouse sexual desire." Maj. Op. at 9246. The majority reasons that the military judge's "definition of pornography" does not "limit Aguilar-Turcios' admission to the accessing of images or pictures only" and suggests that it may also include pornographic writings. Maj. Op. at 9246. This is, of course, flatly incompatible with Aguilar-Turcios' admissions. There is no room for dispute about what Aguilar-Turcios was viewing.

Second, the majority reasons that because the military judge defined "sexually explicit conduct" in a manner different from the definition in 18 U.S.C. § 2256(2)(A), Aguilar-Turcios' guilty plea to possessing images of minors involved in sexually explicit conduct might have involved conduct not embraced by the federal definition. Maj. Op. at 9246-47. Here, the military judge defined "sexually explicit conduct" as "conduct that is plainly or clearly involving sexually [sic] activity; the organs of sex; or the instincts, drives, or behavior associated with sexual activity."[10] The federal statute, however, defines "sexually explicit conduct" as "actual or simulated—(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (ii) bestiality; (iii) masturbation; (iv) sadistic or masochistic abuse; or (v) lascivious exhibition of the genitals or pubic area of any person." 18 U.S.C. § 2256(2)(A). The majority reasons, therefore, that Aguilar-Turcios could have admitted to possessing images of minors involved in conduct involving the instincts or drives of sex without depicting actual sexual intercourse, such as "an image of minors kissing." Maj. Op. at 9247-48. Such conduct, the majority argues, is not encompassed in the federal definition.

This reasoning strains credulity. Aguilar-Turcios was not court-martialed, charged and convicted, dishonorably discharged, and placed in removal proceedings for reading romance novels or watching Shirley Temple movies on his government computer. We know that he admitted to using his government computer to access pornographic internet websites and he admitted to using that same computer to download pornographic images of children during the same time period. There is no need to speculate as the majority does

---

[10]In his signed statements, admitted into evidence at his court martial, Aguilar-Turcios stated that he understood "child pornography" to mean "sexual pictures or nude pictures of teens or preteens or pictures of teens or preteens having sex."

about what these pictures depicted; even counsel at oral argument conceded that the pictures accessed by Aguilar-Turcios were not pictures of children kissing. Copies of the pictures are part of the administrative record and they leave no doubt that Aguilar-Turcios pled guilty to possessing images of minors involved in sexually explicit conduct under both the federal definition and the one given by the military judge. I cannot join the majority's contrary conclusion.

## III

The majority's insistence on rigid formalism when it is not required is perplexing. A more flexible application of the modified categorical approach is not only consistent with our en banc decision in *Aguila-Montes*, but warranted here because the reasons for adopting a rigid reading of the *Taylor* categorical and modified categorical analysis in the *criminal* context are not implicated in *civil* removal proceedings. *See Nijhawan v. Holder*, 557 U.S. 29, 42 (2009) ("[A] deportation proceeding is a civil proceeding in which the Government does not have to prove its claims 'beyond a reasonable doubt.' "); *accord Kawashima v. Holder*, 615 F.3d 1043, 1056 (9th Cir. 2010) (holding that unlike in criminal proceedings, "the BIA is not limited to only those documents which a court applying the modified categorical approach may review"); *but see* Maj. Op. at 9232-35.

The categorical/modified categorical analysis developed in criminal cases, where concerns raised in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), are front and center. *See, e.g., Shepard*, 544 U.S. at 24-26 (discussing potential *Apprendi* problems if a sentencing court were to consider non-jury found facts in connection with a sentencing enhancement under the Armed Career Criminal Act); *id.* at 26-28 (Thomas, J., concurring in part and concurring in the judgment) (arguing that the *Taylor* categorical approach violates the Sixth Amendment); *Taylor*, 495 U.S. at 601 ("If the sentencing court were to conclude, from its own review of the record,

that the defendant actually committed a generic burglary, could the defendant challenge this conclusion as abridging his right to a jury trial?"). But this is not a criminal case in which Aguilar-Turcios might be subject to increased criminal penalties on the basis of judge-found facts, because an alien facing removal is not entitled to a jury trial to determine whether he is removable. *See Turner v. Williams*, 194 U.S. 279, 290 (1904) ("[T]he deportation of an alien who is found to be here in violation of law is not a deprivation of liberty without due process of law, and . . . the provisions of the Constitution securing the right of trial by jury have no application."). Furthermore, the standard of proof for establishing that an alien is removable is lower than the standard of proof required for a criminal conviction. *See* 8 U.S.C. § 1229a(c)(3)(A) (establishing that the government has the burden to prove an alien is removable by "clear and convincing evidence").[11]

A statutory concern may arise if the modified categorical approach is applied more flexibly in the immigration context because Congress has only made aliens removable for actual *convictions* of certain crimes, not for having engaged in certain *elements*. *See, e.g.*, 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien *who is convicted* of an aggravated felony at any time after admission is deportable." (emphasis added)); *see also Taylor*, 495 U.S. at 600 ("[T]he language of [18 U.S.C.] § 924(e) generally supports the inference that Congress intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain

---

[11]In fact, the First Circuit has criticized us for applying our "modified categorical approach" too strictly in the immigration context. *See Conteh v. Gonzalez*, 461 F.3d 45, 54-55 (1st Cir. 2006) (noting that the constitutional concerns motivating the categorical analysis in *Shepard* and *Taylor* are not present in civil immigration proceedings, that the BIA "favor[s] a less restrictive form of the categorical approach in cases other than those controlled by Ninth Circuit precedent," and that the Ninth Circuit's form of the modified categorical analysis "impermissibly elevates the government's burden in civil removal proceedings" to "proof beyond a reasonable doubt.").

categories, and not to the facts underlying the prior convictions."). This method of interpreting the statutory language is motivated by a concern for "the practical difficulties and potential unfairness" of inquiring into the facts of each individual conviction, *Taylor*, 495 U.S. at 601, and the desire to avoid what would basically be a retrial of the conviction, *see id.* at 601-02. But that concern is not present in this case. There is no need to retry the facts of the conviction here because the plea colloquy, charging document, and stipulations of fact are undisputed in the record before us.

This case illustrates precisely why a more flexible approach to the modified categorical analysis should be embraced when analyzing civil removal proceedings. There is no doubt that Aguilar-Turcios is an alien, that he knowingly possessed images depicting a minor engaging in sexually explicit conduct, that those images required a minor actually to engage in sexually explicit conduct, that he was convicted under the UCMJ for that crime, and that aliens convicted of knowing possession of child pornography are removable. Finding otherwise requires a significant indulgence of the "legal imagination." *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *cf. James v. United States*, 550 U.S. 192, 207-08 (2002) ("One could, of course, imagine a situation in which attempted burglary might not pose a realistic risk of confrontation or injury to anyone . . . . But ACCA does not require metaphysical certainty."). The conduct in question was presented to Aguilar-Turcios and he had every incentive to dispute it. If the concern motivating the entire categorical/modified categorical exercise in the immigration context is that courts must be certain of the conduct that an alien committed before the alien is removed and be certain that the alien had the opportunity and incentive to contest the relevant facts related to that conduct, then we need not be worried here that we are paying improper attention to that motivating concern.[12]

(Text continued on page 9270)

---

[12]The majority rejects the proposition that we treat criminal and civil removal proceedings differently because "the Supreme Court has repeat-

edly applied the categorical and modified categorical approaches in immigration cases" in recent years, Maj. Op. at 9233 (citing *Kawashima v. Holder*, 132 S. Ct. 1166, 1172 (2012); *Carachuri-Rosendo*, 130 S. Ct. 2577, 2586-87 (2010); *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 185-87 (2007)), and because other circuits have recognized that these approaches apply in the immigration context, Maj. Op. at 9233-34. I do not disagree with these unremarkable observations, but the question here is not *whether* the categorical (or modified categorical) test should be applied in immigration proceedings, but *how* it should be applied. Although, we recently confirmed in *Aguila-Montes* that the categorical and modified categorical approaches "establish the rules by which the government may use prior state convictions . . . to remove certain aliens," 655 F.3d at 917, nothing we said in *Aguila-Montes* (or that the Supreme Court has said in its categorical/modified categorical jurisprudence) precludes us from considering whether our application of the test in the immigration context need be as rigid as it is in criminal proceedings, where constitutional protections are at their highest. *See Magallanes-Damian v. INS*, 783 F.2d 931, 933 (9th Cir. 1986) ("Deportation hearings are deemed to be civil, not criminal, proceedings and thus not subject to the full panoply of procedural safeguards accompanying criminal trials."). Those cases certainly do not mandate what the majority holds: that "the categorical and modified categorical approaches apply . . . in the same manner" in both immigration and criminal proceedings. Maj. Op. at 9233.

To be clear, I am not proposing that we do away with the categorical/modified categorical approach in the context of immigration proceedings. Nor am I suggesting that the modified categorical approach in immigration proceedings permits us to look to documents outside the realm of *Shepard*, as the majority incorrectly seems to suggest. *See* Maj. Op. at 9232. I agree that we may not look beyond the *Shepard* documents when conducting our analysis but I emphatically disagree with the majority that we may not conduct "a more expansive review of the *Shepard* documents." *Id.* at 9242. As I read it, *Shepard* defines the "*documents* a court may consider under the modified categorical approach in order to determine whether a guilty plea to an offense defined by a nongeneric statute 'necessarily admitted elements of the generic offense.' " *Aguila-Montes*, 655 F.3d at 921 (emphasis added) (quoting *Shepard*, 544 U.S. at 26). If a document is a *Shepard* document, meaning that it may reliably be consulted as the factual basis for a defendant's plea, why must we self-redact the parts we deem unnecessary and forgo an "expansive reading," if that expansive reading involves nothing more than considering the document in its entirety?

IV

The record presented to the BIA and the Immigration Judge leaves no room for doubt about the conduct to which Aguilar-Turcios pled guilty. Had he not been in the military at the time of his offense, or had his conduct occurred off-base, he could have been prosecuted under either California Penal Code § 311.11, which tracks precisely the elements of 18 U.S.C. § 2252, or under § 2252 itself, which is statutorily defined as an aggravated felony, *see* 8 U.S.C. § 1101(a)(43)(I), and his Article 92 conviction "necessarily" rested on all of the elements of a § 2252 violation.

This is not a close case. Aguilar-Turcios was convicted of a removable offense, as the BIA properly concluded. I would deny the petition.

I respectfully dissent.

---

My point is that our jurisprudence is flexible enough to acknowledge a distinction between the criminal and civil context, and that we should apply the modified categorical approach accordingly, especially where, as here, the considerations suggesting a cautious approach are not present and where the *Shepard* documents leave no doubt as to what occurred.